James D. Nelson, OSB #72219
jnelson@bpmlaw.com
BETTS, PATTERSON, & MINES, P.S.
One Convention Place
701 Pike Street, Suite 1400
Seattle, WA 98101
Telephone: (206) 292-9988
Facsimile: (206) 343-7053

Pam Kohli Jacobson, *pro hac vice*
pjacobson@bpmlaw.com
BETTS, PATTERSON, & MINES, P.S.
One Convention Place
701 Pike Street, Suite 1400
Seattle, WA 98101
Telephone: (206) 292-9988
Facsimile: (206) 343-7053

Attorneys for Defendants University of Oregon,
Mia Tuan, Edward J. Kame'enui, Francis J. Fien,
and Brad Shelton

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **DYNAMIC MEASUREMENT GROUP, INC.,** an Oregon corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**UNIVERSITY OF OREGON**, a special governmental body as defined by ORS 174.117(1)(i); **MIA TUAN**, individually and in | Case No.: 6:14-cv-01295-TC<br><br>DEFENDANTS UNIVERSITY OF OREGON, MIA TUAN, EDWARD J. KAME'ENUI, FRANCIS J. FIEN IV, AND BRAD SHELTON'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO DYNAMIC MEASUREMENT GROUP, INC.'S COMPLAINT FOR TRADEMARK |

PAGE 1 -  ANSWER, AFFIRMATIVE DEFENSES AND
           COUNTERCLAIMS

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

her official capacity; **EDWARD J. KAME'ENUI**, individually and in his official capacity; **FRANCIS J. FIEN IV**, a/k/a Hank Fein, individually and in his official capacity; **BRAD SHELTON**, individually and in his official capacity; and **HOP SKIP TECHNOLOGIES INC.**, an Oregon corporation,

Defendants.

AND COPYRIGHT INFRINGEMENT

**DEMAND FOR JURY TRIAL**

Defendants University of Oregon (the "University"), Mia Tuan, Edward Kame'enui, Francis Fien IV, and Brad Shelton (collectively, the "University Defendants") by and through their undersigned counsel, hereby assert that Plaintiff, Dynamic Measurement Group, Inc. ("DMG") and its principals, Drs. Good and Kaminski, systematically misappropriated the University's federally-funded intellectual property for their own profit.

Dr. Good admitted to this fraud in his sworn testimony before the United States House of Representatives Committee on Education and Labor. In fact, the public record is replete with such evidence. For DMG's trademark registrations, Drs. Good and Kaminski filed trademark applications for trademarks that DMG did not own, and submitted University webpages to the Trademark Office to prove DMG's use of the marks. For DMG's copyright registrations, Drs. Good and Kaminski again registered works that DMG did not own, and that expressly credit the authorship and support of the University, their University colleagues and federal research grants.

However, the greatest travesty arises from DMG's use of the University's DIBELS trademark to sell an unsound reading assessment product. Because DMG uses the University's DIBELS moniker, parents and educators are deceived into thinking that the DMG product is able to detect a significant percentage of at-risk young readers when it cannot.

The University Defendants in answer to DMG's Complaint For Trademark and Copyright Infringement ("Complaint"), hereby admit, deny, state, and allege as follows:

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## THE PARTIES

1.      The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 1 of the Complaint and therefore deny them.

2.      The University Defendants admit that the University has a principal place of business at 1585 E. 13th Avenue, Eugene, OR 97403.  The University Defendants aver that the University is an arm of the state under the Eleventh Amendment of the United States Constitution and is a state entity under the Oregon Constitution.  The University Defendants deny the remaining allegations in paragraph 2 of the Complaint.

3.      The University Defendants admit that Mia Tuan ("Professor Tuan") is a resident of the State of Oregon.  The University Defendants deny the remaining allegations in paragraph 3 the Complaint.

4.      The University Defendants admit the allegations in paragraph 4 of the Complaint.

5.      The University Defendants admit the allegations in paragraph 5 of the Complaint.

6.      The University Defendants admit the allegations in paragraph 6 of the Complaint.

7.      The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 7 of the Complaint and therefore deny them.

8.      The University Defendants admit that the Complaint purports to allege claims over which the Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1338 and 28 U.S.C. § 1367.  The University Defendants deny the remaining allegations in paragraph 8 of the Complaint.

9.      The University Defendants do not contest venue in this action.  The University Defendants deny the remaining allegations in paragraph 9 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

10.     The University Defendants admit that Dr. Ruth Kaminski and Dr. Roland Good, along with numerous other University faculty and staff researched and developed the Dynamic Indicators of Basic Early Literacy Skills ("DIBELS").   The University Defendants admit DIBELS are measures designed to test the early literacy skills of students.   The University Defendants deny the remaining allegations in paragraph 10 of the Complaint.

11.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 11 of the Complaint and therefore deny them.

12.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 12 of the Complaint and therefore deny them.

13.     The University Defendants deny that Dr. Kaminski first conceived of the DIBELS assessment measures.  The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 13 of the Complaint and therefore deny them.

14.     The University Defendants admit that Dr. Kaminski obtained her Ph.D. from the University in 1992.  The University Defendants deny the remaining allegations in paragraph 14 of the Complaint.

15.     The University Defendants admit that Dr. Good acted as Dr. Kaminski's doctoral advisor.  The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 15 regarding Drs. Good and Kaminski's paid DIBELS trainings and therefore deny them.  The University Defendants aver that the document attached as Exhibit A speaks for itself and deny the allegations of paragraph 15 to the extent they do not accurately describe the document.   The University Defendants deny the remaining allegations in paragraph 15 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

16.     The University Defendants admit that the University focused academic research on DIBELS.  The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 16 regarding the activities of other universities.  The University Defendants deny the remaining allegations in paragraph 16 of the Complaint.

17.     The University Defendants admit that schools began to adopt the DIBELS measures in the 1990s.  The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity as to the remaining allegations in paragraph 17 of the Complaint and therefore deny them.

18.     The University Defendants deny the allegations in paragraph 18 of the Complaint.

19.     The University Defendants admit that the University developed and implemented the DIBELS Data System at least as early as May 2000.  The University Defendants deny the remaining allegations in paragraph 19 of the Complaint.

20.     The University Defendants aver that the document attached as Exhibit B speaks for itself and deny the allegations of paragraph 20 to the extent they do not accurately describe the document.  The University Defendants deny the remaining allegations in paragraph 20 of the Complaint.

21.     The University Defendants deny the allegations in paragraph 21 of the Complaint.

22.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 22 of the Complaint and therefore deny them.

23.     The University Defendants admit that Dr. Good and Dr. Kaminski approached the University regarding the ownership of copyright related to DIBELS 5th Edition.  The University Defendants deny the remaining allegations in paragraph 23 of the Complaint.

24.     The University Defendants deny the allegations in paragraph 24 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

25.     The University Defendants admit that the University repudiated Dr. Good and Dr. Kaminski's ownership of the copyright to DIBELS 5th Edition at least as early as May 2001. The University Defendants deny the remaining allegations in paragraph 25 of the Complaint.

26.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 26 of the Complaint and therefore deny them.

27.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 27 of the Complaint and therefore deny them.

28.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 28 of the Complaint and therefore deny them.

29.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 29 of the Complaint regarding the incorporation of DMG and therefore deny them.  The University Defendants deny the remaining allegations in paragraph 29 of the Complaint.

30.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 30 of the Complaint and therefore deny them.

31.     The University Defendants aver that any trademark application filed with the United States Patent and Trademark Office speaks for itself and deny the allegations in paragraph 31 of the Complaint to the extent they do not accurately describe the application.  The University Defendants deny the remaining allegations in paragraph 31 of the Complaint.

32.     The University Defendants aver that the document attached to the Complaint as Exhibit C speaks for itself and deny the allegations of paragraph 32 to the extent they do not

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

accurately describe the document.  The University Defendants deny the remaining allegations in paragraph 32 of the Complaint.

33.     The University Defendants deny the allegations in paragraph 33 of the Complaint.

34.     The University Defendants aver that the document attached to the Complaint as Exhibit D speaks for itself and deny the allegations of paragraph 34 to the extent they do not accurately describe the document.  The University Defendants deny the remaining allegations in paragraph 34 of the Complaint.

35.     The University Defendants aver that the document attached to the Complaint as Exhibit D speaks for itself and deny the allegations of paragraph 35 to the extent they do not accurately describe the document.  The University Defendants deny the remaining allegations in paragraph 35 of the Complaint.

36.     The University Defendants deny the allegations in paragraph 36 of the Complaint.

37.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 37 of the Complaint and therefore deny them.

38.     The University Defendants deny the allegations in paragraph 38 of the Complaint.

39.     The University Defendants deny the allegations in paragraph 39 of the Complaint.

40.     The University Defendants aver that the document attached to the Complaint as Exhibit E speaks for itself and deny the allegations of paragraph 40 to the extent they do not accurately describe the document.  The University Defendants deny the remaining allegations in paragraph 40 of the Complaint.

41.     The University Defendants deny the allegations in paragraph 41 of the Complaint.

42.     The University Defendants deny the allegations in paragraph 42 of the Complaint.

43.     The University Defendants deny the allegations in paragraph 43 of the Complaint.

44.     The University Defendants deny the allegations in paragraph 44 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

45. The University Defendants admit that Dr. Kaminski continued to work for the University in various capacities until at least June 2011. The University Defendants deny the remaining allegations in paragraph 45 of the Complaint.

46. The University Defendants admit that the University undertook an internal investigation of Dr. Good in 2004. The University Defendants deny the remaining allegations in paragraph 46 of the Complaint.

47. The University Defendants admit that the University undertook an internal investigation of Dr. Good in 2004. The University Defendants deny the remaining allegations in paragraph 47 of the Complaint.

48. The University Defendants admit that the University participated in negotiations with DMG related to DIBELS. The University Defendants admit that the University and DMG exchanged numerous drafts of a document entitled "Intellectual Property Agreement." The University Defendants deny the remaining allegations in paragraph 48 of the Complaint.

49. The University Defendants admit that the University and DMG exchanged numerous drafts of a document entitled "Intellectual Property Agreement." The University Defendants deny the remaining allegations in paragraph 49 of the Complaint.

50. The University Defendants admit that the University and DMG exchanged numerous drafts of a document entitled "Intellectual Property Agreement." The University Defendants admit that the University never entered into or executed any Intellectual Property Agreement with DMG. The University Defendants deny the remaining allegations in paragraph 50 of the Complaint.

51. The University Defendants aver that the document attached to the Complaint as Exhibit F speaks for itself and deny the allegations of paragraph 51 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 51 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

52. The University Defendants aver that the document attached to the Complaint as Exhibit F speaks for itself and deny the allegations of paragraph 52 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 52 of the Complaint.

53. The University Defendants aver that the document attached to the Complaint as Exhibit F speaks for itself and deny the allegations of paragraph 53 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 53 of the Complaint.

54. The University Defendants admit that Dr. Good altered his time commitment with the University at various times during his tenure at the University. The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 54 of the Complaint and therefore deny them.

55. The University Defendants aver that the documents attached to the Complaint as Exhibits G, H, I, J, K, L and M speak for themselves and deny the allegations of paragraph 55 to the extent they do not accurately describe the documents. The University Defendants deny the remaining allegations in paragraph 55 of the Complaint.

56. The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 56 of the Complaint related to third party investment in DIBELS and therefore deny them. The University Defendants deny the remaining allegations in paragraph 56 of the Complaint.

57. The University Defendants aver that the document attached as Exhibit N speaks for itself and deny the allegations of paragraph 57 to the extent they do not accurately describe the document. The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 57 of the Complaint and therefore deny them.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

58.     The University Defendants admit that the University began receiving income from the DIBELS Data System long before DMG even existed as a corporate entity.  The University Defendants deny the remaining allegations in paragraph 58 of the Complaint.

59.     The University Defendants deny the allegations in paragraph 59 of the Complaint.

60.     The University Defendants admit that DMG appears to be identified as the owner of certain federal trademark registrations.  The University Defendants deny the remaining allegations in paragraph 60 of the Complaint.

61.     The University Defendants aver that U.S. Registration Nos. 2,729,165, 2,750,275, 2,771,559, 3,970,666, 4,084,850, 4,164,609, and 3,446,832 speak for themselves and deny the allegations in paragraph 61 to the extent they do not accurately describe these registrations.  The University Defendants deny the remaining allegations in paragraph 61 of the Complaint.

62.     The University Defendants deny that DMG's registration for DIBELS, Reg. No. 2,729,165, is incontestable.  The University Defendants aver that any DMG filings with the USPTO in support of Reg. No. 2,729,165 speak for themselves and deny the allegations in paragraph 62 to the extent they do not accurately describe the documents.  The University Defendants deny the remaining allegations in paragraph 62 of the Complaint.

63.     The University Defendants aver that any DMG filings with the USPTO in support of Reg. No. 2,729,165 speak for themselves and deny the allegations in paragraph 63 to the extent they do not accurately describe the documents.  The University Defendants deny the remaining allegations in paragraph 63 of the Complaint.

64.     The University Defendants admit that Indicadores Dinámicos del Éxito en la Lectura, or IDEL, is a Spanish language early literacy assessment tool.  The University Defendants deny the remaining allegations in paragraph 64 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

65.     The University Defendants admit that the IDEL assessment measures were previously known as BIDEL. The University Defendants deny the remaining allegations in paragraph 65 of the Complaint.

66.     The University Defendants admit that material bearing the IDEL mark were available for download from the University's website.  The University Defendants aver that the document attached as Exhibit P speaks for itself and deny the allegations of paragraph 66 to the extent they do not accurately describe the document.  The University Defendants deny the remaining allegations in paragraph 66 of the Complaint.

67.     The University Defendants aver that the document attached as Exhibit Q speaks for itself and deny the allegations of paragraph 67 to the extent they do not accurately describe the document.  The University Defendants deny the remaining allegations in paragraph 67 of the Complaint.

68.     The University Defendants admit that the University DIBELS Data System did not at first offer a paid service for reports on IDEL results.  The University Defendants deny the remaining allegations in paragraph 68 of the Complaint.

69.     The University Defendants deny that the development and creation of DIBELS 6th Edition was funded entirely by DMG.  The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 69 of the Complaint and therefore deny them.

70.     The University Defendants aver that the document attached as Exhibit K speaks for itself and deny the allegations of paragraph 70 to the extent they do not accurately describe the document.  The University Defendants deny the remaining allegations in paragraph 70 of the Complaint.

71.     The University Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 71 of the Complaint regarding

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

DMG's activities related to DIBELS Next and DIBELSNet and therefore deny them. The University Defendants deny the remaining allegations in paragraph 71 of the Complaint.

72.     The University Defendants admit that the University sent DMG the April 4, 2012 letter attached as Exhibit R to the Complaint. The University Defendants deny the remaining allegations in paragraph 72 of the Complaint.

73.     The University Defendants admit that the University notified Sopris and Wireless Generation of the University's ownership of the DIBELS and IDEL intellectual property. The University Defendants deny the remaining allegations in paragraph 73 of the Complaint.

74.     The University Defendants admit that the University filed an application to register the DIBELS mark with the USPTO on July 20, 2012. The University Defendants aver that the document attached as Exhibit S speaks for itself and deny the allegations of paragraph 74 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 74 of the Complaint.

75.     The University Defendants admit that the USPTO refused to register the University's application for DIBELS on November 15, 2012. The University Defendants deny the remaining allegations in paragraph 75 of the Complaint.

76.     The University Defendants admit that the University filed a use-based and an intent to use application to register the IDEL trademark on June 3, 2013. The University Defendants further admit DMG's use of IDEL is confusingly similar to the University's use of the IDEL mark. The University Defendants deny the remaining allegations in paragraph 76 of the Complaint.

77.     The University Defendants admit the allegations in paragraph 77 of the Complaint.

78.     The University Defendants admit the allegations in paragraph 78 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

79. The University Defendants admit the allegations in paragraph 79 of the Complaint.

80. The University Defendants deny the allegations in paragraph 80 of the Complaint.

81. The University Defendants incorporate by reference their responses to the allegations of paragraphs 1 through 80 as their response to paragraph 81 of the Complaint.

82. The University Defendants deny the allegations in paragraph 82 of the Complaint.

83. The University Defendants admit the University restored its own Educational Use Agreement to its website. The University Defendants aver that the document attached as Exhibit T speaks for itself and deny the allegations of paragraph 83 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 83 of the Complaint.

84. The University Defendants admit that the University website acknowledges the University's ownership and use of DIBELS. The University Defendants deny the remaining allegations in paragraph 84 of the Complaint.

85. The University Defendants admit that the University DIBELS materials reference University's use of the DIBELS mark. The University Defendants aver that the documents attached as Exhibits U and J speak for themselves and deny the allegations of paragraph 85 to the extent they do not accurately describe these documents. The University Defendants deny the remaining allegations in paragraph 85 of the Complaint.

86. The University Defendants deny the allegations in paragraph 86 of the Complaint.

87. The University Defendants admit that DMG's use of the DIBELS mark is unlawful and illegitimate. The University Defendants deny the remaining allegations in paragraph 87 of the Complaint.

88. The University Defendants admit that the University owns the DIBELS mark. The University Defendants aver that the document attached as Exhibit V speaks for itself and

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

deny the allegations of paragraph 88 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 88 of the Complaint.

89. The University Defendants admit that a Google search for "DIBELS" identifies the University as its first hit and that the University website is the Official DIBELS Home Page. The University Defendants aver that the document attached as Exhibit W speaks for itself and deny the allegations of paragraph 89 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 89 of the Complaint.

90. The University Defendants admit that the University collaborated with Defendant Hop Skip Technologies Inc. ("Hop Skip") to release an iTunes mobile application entitled HiFi Reading, and further admit that the application is advertised as supporting the administration of DIBELS 6th Edition Oral Reading Fluency assessments. The University Defendants aver that the documents attached as Exhibits X and Y speak for themselves and deny the allegations of paragraph 90 to the extent they do not accurately describe these documents. The University Defendants deny the remaining allegations in paragraph 90 of the Complaint.

91. The University Defendants aver that the document attached to the Complaint as Exhibit Z speaks for itself and deny allegations of paragraph 91 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 91 of the Complaint.

92. The University Defendants admit that there is consumer confusion related to DIBELS. The University Defendants deny the remaining allegations in paragraph 92 of the Complaint.

93. The University Defendants deny the allegations in paragraph 93 of the Complaint.

94. The University Defendants deny the allegations in paragraph 94 of the Complaint.

95. The University Defendants incorporate by reference their responses to paragraphs 1-94 above as their response to paragraph 95 of the Complaint.

PAGE 14 -  ANSWER, AFFIRMATIVE DEFENSES AND
             COUNTERCLAIMS

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

96.     The University Defendants admit that the University owns the IDEL mark and was the first to use the IDEL mark in commerce.  The University Defendants deny the remaining allegations in paragraph 96 of the Complaint.

97.     The University Defendants admit that the University's website reflects the University's ownership of the intellectual property rights associated with IDEL.  The University Defendants aver that the document attached as Exhibit T speaks for itself and deny the allegations of paragraph 97 to the extent they do not accurately describe the document.  The University Defendants deny the remaining allegations in paragraph 97 of the Complaint.

98.     The University Defendants admit that the University's website reflects the University's ownership of the intellectual property rights associated with IDEL.  The University Defendants aver that the documents attached as Exhibits AA and BB speak for themselves and deny the allegations of paragraph 98 to the extent they do not accurately describe the documents.  The University Defendants deny the remaining allegations in paragraph 98 of the Complaint.

99.     The University Defendants admit that the University is the owner of the IDEL mark and ultimate source of IDEL products.  The University Defendants deny the remaining allegations in paragraph 99 of the Complaint.

100.    The University Defendants admit that DMG is not the legitimate source of IDEL products.  The University Defendants deny the remaining allegations in paragraph 100 of the Complaint.

101.    The University Defendants admit that a likelihood of confusion arises from DMG's use of the IDEL mark.  The University Defendants deny the remaining allegations in paragraph 101 of the Complaint.

102.    The University Defendants deny the allegations in paragraph 102 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

103.     The University Defendants deny the allegations in paragraph 103 of the Complaint.

104.     The University Defendants incorporate by reference their responses to paragraphs 1-103 above as their response to paragraph 104 of the Complaint.

105.     The University Defendants admit that the University refers to DMG's DIBELS Next benchmark goals as "DIBELS Next Former Goals" and UO's DIBELS Next benchmark goals as "DIBELS Next Recommended Goals."   The University Defendants aver that the document attached as Exhibit CC speaks for itself and deny the allegations of paragraph 105 to the extent they do not accurately describe the document.   The University Defendants deny the remaining allegations in paragraph 105 of the Complaint.

106.     The University Defendants deny the allegations in paragraph 106 of the Complaint.

107.     The University Defendants admit that there is consumer confusion related to DMG's use of DIBELS.   The University Defendants deny the remaining allegations in paragraph 107 of the Complaint.

108.     The University Defendants aver that the document attached as Exhibit DD speaks for itself and deny the allegations of paragraph 108 to the extent they do not accurately describe the document.   The University Defendants deny the remaining allegations in paragraph 108 of the Complaint.

109.     The University Defendants deny the allegations in paragraph 109 of the Complaint.

110.     The University Defendants deny the allegations in paragraph 110 of the Complaint.

111.     The University Defendants deny the allegations in paragraph 111 of the Complaint.

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

112.    The University Defendants incorporate by reference their responses to paragraphs 1-111 above as their response to paragraph 112 of the Complaint.

113.    The University Defendants deny the allegations in paragraph 113 of the Complaint.

114.    The University Defendants deny the allegations in paragraph 114 of the Complaint.

115.    The University Defendants incorporate by reference their responses to paragraphs 1-114 above as their response to paragraph 115 of the Complaint.

116.    The University Defendants deny the allegations in paragraph 116 of the Complaint.

117.    The University Defendants deny the allegations in paragraph 117 of the Complaint.

118.    The University Defendants incorporate by reference their responses to paragraphs 1-117 above as their response to paragraph 118 of the Complaint.

119.    The University Defendants deny the allegations in paragraph 119 of the Complaint.

120.    The University Defendants deny the allegations in paragraph 120 of the Complaint.

121.    The University Defendants incorporate by reference their responses to paragraphs 1-120 above as their response to paragraph 121 of the Complaint.

122.    The University Defendants deny the allegations in paragraph 122 of the Complaint.

123.    The University Defendants deny the allegations in paragraph 123 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

124. The University Defendants incorporate by reference their responses to paragraphs 1-123 above as their response to paragraph 124 of the Complaint.

125. The University Defendants deny the allegations in paragraph 125 of the Complaint.

126. The University Defendants aver that any DMG copyright registration speaks for itself and the deny the allegations of paragraph 126 to the extent they do not accurately describe these registrations. The University Defendants deny the remaining allegations in paragraph 126 of the Complaint.

127. The University Defendants aver that the document attached as Exhibit EE speaks for itself and deny the allegations of paragraph 127 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 127 of the Complaint.

128. The University Defendants admit that the University jointly developed the HiFi Reading mobile application with Hop Skip and that this application is designed to facilitate the administration, scoring, and management of DIBELS 6th Edition assessments. The University Defendants aver that the document attached as Exhibit Y speaks for itself and deny the allegations of paragraph 128 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 128 of the Complaint.

129. The University Defendants deny the allegations in paragraph 129 of the Complaint.

130. The University Defendants deny the allegations in paragraph 130 of the Complaint.

131. The University Defendants deny the allegations in paragraph 131 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

132.    The University Defendants deny the allegations in paragraph 132 of the Complaint.

133.    The University Defendants incorporate by reference their responses to paragraphs 1-132 above as their response to paragraph 133 of the Complaint.

134.    The University Defendants admit that DMG unlawfully placed copyright notices on government funded academic research and University works arising from University resources. The University Defendants aver that the document attached as Exhibit FF speaks for itself and deny the allegations of paragraph 134 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 134 of the Complaint.

135.    The University Defendants deny the allegations in paragraph 135 of the Complaint.

136.    The University Defendants deny the allegations in paragraph 136 of the Complaint.

137.    The University Defendants aver that the document attached as Exhibit X speaks for itself and deny the allegations of paragraph 137 to the extent they do not accurately describe the document. The University Defendants deny the remaining allegations in paragraph 137 of the Complaint.

138.    The University Defendants deny the allegations in paragraph 138 of the Complaint.

139.    The University Defendants deny the allegations in paragraph 139 of the Complaint.

The University Defendants deny that DMG is entitled to the judgment, injunctive relief, damages and other relief set forth in paragraphs A-J on pages 41-46 of the Complaint.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## AFFIRMATIVE DEFENSES

140.    By alleging the Affirmative Defenses set forth below, the University Defendants do not agree or concede that they bear the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.  For their Affirmative Defenses to the Complaint, the University Defendants state as follows:

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

141.    The Complaint fails, in whole or in part, to state a claim against the University Defendants upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Statute of Limitations)

142.    DMG's claims are barred, in whole or in part, by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE
### (Waiver, Laches, Acquiescence, and Estoppel)

143.    DMG's claims are barred, in whole or in part, by the doctrines of waiver, laches, acquiescence and estoppel.

### FOURTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

144.    DMG's claims are barred, in whole or in part, by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE
### (No Valid Trademark)

145.    DMG's claims are barred, in whole or in part, because DMG has no valid, protectable marks in which it enjoys any rights that may be asserted against the University Defendants.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## SIXTH AFFIRMATIVE DEFENSE
### (No Ownership of Trademark)

146. DMG's claims are barred, in whole or in part, because DMG does not own rights to the DIBELS and IDEL trademarks.

## SEVENTH AFFIRMATIVE DEFENSE
### (Fraud in Procurement of Trademark Registrations)

147. DMG's claim of trademark infringement is barred, in whole or in part, by fraud or deception in the trademark registration process.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Valid Copyright)

148. DMG's claims are barred, in whole or in part, because DMG has no valid protectable copyrights in which it enjoys any rights that may be asserted against the University Defendants.

## EIGHTH AFFIRMATIVE DEFENSE
### (Fraud in Procurement of Copyright Registrations)

149. DMG's claims are barred, in whole or in part, by fraud or deception in the copyright registration process, or by misuse of registered copyrights.

## NINTH AFFIRMATIVE DEFENSE
### (Work For Hire)

150. DMG's claims are barred, in whole or in part, by the work for hire doctrine.

## TENTH AFFIRMATIVE DEFENSE
### (Joint Authorship)

151. DMG's claims are barred, in whole or in part, by the doctrine of joint authorship.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Fair Use)

152. DMG's claims are barred, in whole or in part, by the doctrine of fair use.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## TWELFTH AFFIRMATIVE DEFENSE
### (No Injunctive or Equitable Relief)

153.     DMG is not entitled to any injunctive or equitable relief because it will not suffer irreparable harm and has an adequate remedy at law.

## ADDITIONAL DEFENSES

154.     The University Defendants reserve the right to assert additional defenses based on information learned or obtained during discovery.

## COUNTERCLAIMS

For its counterclaims, Defendant University of Oregon ("the University") hereby states the following against the counterclaim defendants Dynamic Measurement Group, Inc. ("DMG"), and DMG's co-founders Dr. Roland Good and Dr. Ruth Kaminski (collectively "Counter-Defendants").

## I.      INTRODUCTION

It is indisputable that Drs. Good and Kaminski systematically misappropriated the University's federally-funded intellectual property for their own profit. In fact, the public record is replete with supporting evidence.  Dr. Good, in his 2007 sworn testimony before the United States House of Representatives Committee on Education and Labor, expressly conceded that he used federal research funds to create his company, DMG.  Moreover, DMG's trademark and copyright applications for DIBELS and IDEL show Counter-Defendants' prior knowledge that the underlying intellectual property was owned by the University.

As and for its counterclaims against Counter-Defendants, the University respectfully shows as follows:

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## II.    JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1119, 1120, and 1121, and 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

2.      The Court has personal jurisdiction over DMG because, by bringing this action, it has consented to personal jurisdiction, and it has engaged in business activities in, and directed to, this District and the State of Oregon, and committed tortious acts within this District and the State of Oregon.

3.      Personal jurisdiction also exists over Drs. Good and Kaminski because they are the principals of DMG, and primarily participated in the infringing and fraudulent activities by personally taking part in these activities and/or by having control of and directing these activities such that, DMG, Dr. Good and Dr. Kaminski are jointly and severally liable for any damages arising from these activities.  At all material times, Drs. Good and Kaminski transacted business in the State of Oregon such that hailing them into court in Oregon does not offend traditional notions of fair play and substantial justice.

4.      Venue is proper, pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claims arose in this District and Counter-Defendants can be found in this District.

## III.    PARTIES

5.      The University is a public research university located and doing business at 1585 E. 13th Avenue, Eugene, Oregon 97403.

6.      DMG is an Oregon corporation having its principal place of business at 859 Willamette Street, Suite 320, Eugene, Oregon 97401.  DMG was incorporated as an Oregon corporation on January 16, 2002.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

7.      Dr. Good works at the University as an Associate Professor and is a resident of Oregon.  Dr. Good co-founded DMG on January 16, 2002, has continuously worked as an officer at DMG since 2002 and currently acts as its President and Secretary.  Dr. Good continuously worked for the University from June 1988 to the present.

8.      Dr. Kaminski works at the University as a Courtesy Assistant Professor and is a resident of Oregon.  Dr. Kaminski co-founded DMG on January 16, 2002, has continuously worked as an officer at DMG since 2002, and acted as its President until January 10, 2013.  Dr. Kaminski has worked for the University since at least June 16, 1992.  Prior to this time, Dr. Kaminski was a graduate student at the University.

### IV.    FACTUAL ALLEGATIONS

9.      The University is a world-class teaching and research institution, committed to pursuing innovation in more than 260 academic programs.  The University's College of Education ("College of Education") has long been recognized as one of the highest ranking graduate programs in its field.  The College of Education is widely known for its pioneering efforts in applying social and educational research to classroom education.

A.      The University's Early Language and Literacy Assessment Measures

10.     The College of Education has been at the forefront of research conducted in the area of early childhood language and literacy skills and assessment.  The goods and services offered by the College of Education's Center on Teaching and Learning ("CTL"), in particular, have directly impacted the well-being of children and resulted in a quantifiable, marked increase in the early language and literacy skills of students in the United States and throughout the world.  Due to its enormous success, CTL secured millions of dollars in government grants for its projects, research, and outreach services.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

11.     In particular, CTL, under its previous administrative entity, The Institute for Development of Educational Achievement ("IDEA"), created and developed a web-based, data-base system that permits educators to track the results of a set of formative assessments of early English and Spanish language and literacy development.   The English language formative assessments are known as Dynamic Indicators of Basic Early Literacy Skills, or DIBELS ("DIBELS assessments").   The Spanish language formative assessments are known as Indicadores Dinámicos del Éxito en la Lectura, or IDEL ("IDEL assessments").

12.     The DIBELS and IDEL assessments act as screening tools that provide educators with instructional recommendations, benchmark goals and information on student skills in the core components of beginning reading, including phonological awareness, the alphabetic principle, accuracy, and fluency in reading connected text.

13.     The web-based data system that allows educators to track the results of these English and Spanish language assessments is known as the DIBELS Data System.

14.     The University had successfully implemented the DIBELS assessments and the DIBELS Data System throughout the United States prior to DMG and long before DMG even existed as a corporate entity.   The DIBELS assessments and the DIBELS Data System have been used by over 29,000 schools and served over sixteen (16) million students nationwide.   Printouts from the University's website are attached hereto as Exhibit A.

15.     Since at least as early as January 2008, the University successfully implemented the IDEL assessments throughout the United States.

B.     University Resources Dedicated to Early Language and Literary Measures

16.     The University expended enormous resources in the form of government grants and personnel to create, develop and implement the DIBELS assessments, the IDEL assessments, and the DIBELS Data System.   The University dedicated numerous professors,

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

graduate students and other personnel to the research, development and implementation of these assessments and the DIBELS Data System—including the founders of DMG, Drs. Good and Kaminski.

17. Among many other University faculty, staff and personnel, the DIBELS 5th Edition expressly credits the defendants, Ed Kame'enui and Hank Fien, as contributors to the work.

18. Moreover, in addition to other resources, the DIBELS 5th Edition expressly credits the following government research grants awarded to the University:

| Grant No. | Grant Title |
|---|---|
| H024360010 | Early Childhood Research Institute on Measuring Growth and Development U.S. Department of Education |
| H023B90057 | U.S. Department of Education |
| 90CD0819 | U. S. Department of Education, Special Education Programs |
| H180M10006 | Early Childhood Research Institute on Measuring Growth and Development |

19. Among many other University faculty, staff and other personnel, the DIBELS 6th Edition expressly credits the defendants, Ed Kame'enui and Hank Fien, as contributors to the work.

20. Moreover, in addition to other resources, the DIBELS 6th Edition expressly credits the following government research grants awarded to the University:

| Grant No. | Grant Title |
|---|---|
| H024360010 | Early Childhood Research Institute on Measuring Growth and Development U.S. Department of Education |
| H023B90057 | U.S. Department of Education |
| 90CD0819 | U. S. Department of Education, Special Education Programs |
| H180M10006 | Early Childhood Research Institute on Measuring Growth and Development |

PAGE 26 - ANSWER, AFFIRMATIVE DEFENSES AND
        COUNTERCLAIMS

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

| Grant No. | Grant Title |
|---|---|
| CFDA 84.324X | Center for Improving Reading Competence Using Intensive Treatments Schoolwide (Project CIRCUITS) funded by the U. S. Department of Education, Office of Special Education Programs |

21.     Among many other University faculty, staff and other personnel, the DIBELS 6th Edition Revised expressly credits the defendants, Ed Kame'enui and Hank Fien, as contributors to the work.

22.     Moreover, in addition to other resources, the DIBELS 6th Edition Revised expressly credits the following government research grants awarded to the University:

| Grant No. | Grant Title |
|---|---|
| H024360010 | Early Childhood Research Institute on Measuring Growth and Development U.S. Department of Education |
| H023B90057 | U.S. Department of Education |
| 90CD0819 | U. S. Department of Education, Special Education Programs. |
| H180M10006 | Early Childhood Research Institute on Measuring Growth and Development |
| CFDA 84.324X | Center for Improving Reading Competence Using Intensive Treatments Schoolwide (Project CIRCUITS) funded by the U. S. Department of Education, Office of Special Education Programs |

C.     <u>University Ownership of Intellectual Property Related to Early Language and Literacy Measures</u>

23.     University regulations, policies and directives, provide that the University owns and is entitled to own all of the intellectual property developed by its employees, graduate students, and staff with University resources and/or within the scope of their employment.

24.     In addition, University regulations, policies and directives, as well as federal regulations provide that the work product resulting from research and grant funds awarded to the University is the property of the University.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

25.    Drs. Good and Kaminski were notified of the University's ownership and right to ownership of intellectual property developed at the University, using the University resources, and/or using research grant funds awarded to the University.

26.    Drs. Good and Kaminski executed agreements acknowledging the University's ownership and right to ownership of intellectual property developed at the University, using the University resources, and/or using research and grant funds awarded to the University.  Among other things, Drs. Good and Kaminski agreed to assign any intellectual property using University resources to the University.

27.    Notwithstanding their knowledge of the University regulations, policies and directives and these executed agreements, Drs. Good and Kaminski executed assignment agreements purporting to transfer intellectual property rights arising from University resources to DMG.

D.    The University's Trademarks and Trademark Applications

28.    The University owns pending U.S. Application Serial No. 85682672 for the mark DIBELS (the "University DIBELS Mark") for use in International Class 9 in conjunction with "[d]ownloadable educational testing materials and manuals, online modules, and teacher instruction guides in the form of audio files, text files, written documents, and multimedia files for application and utilization of test measures to classroom teaching, all in the field of literacy skills assessment;" in International Class 16 for "[p]rinted educational test materials and user manuals in the field of literacy skills assessment;" and, in International Class 41 for "[p]roviding a literacy testing website featuring secure data collection and analysis for entry of educational assessment test data by users for generation of reports, for the monitoring of student progress, for providing student demographics, and outcome measures, and for providing general information, all in the field of testing for literacy skills assessment; educational testing services, namely,

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

providing literacy testing through the distribution of a hard copy download of a testing tool with a set of procedures and measures for administration to students and scoring by teachers for assessing the acquisition of literacy skills, and assessment quantification of the data generated by the test takers to predict and monitor the development and monitoring of literacy skills; educational services, namely, providing workshops and seminars in the field of literacy skills assessment" (the "'672 Application" or the "University DIBELS Application").  The '672 Application was filed on July 20, 2012.  A copy of the '672 Application is attached hereto as Exhibit B.

29.    The University owns pending U.S. Application Serial No. 85949205 for the mark IDEL, for use in International Class 16 in conjunction with "printed instructional, educational, teaching and professional development materials in the areas of literacy and early literacy assessment and skills in Spanish; educational books, periodical reports, and printed teaching materials in the areas of literacy skills and early literacy skills, monitoring and assessing student outcomes, skill and progress;" and, in International Class 41 for "educational research; educational testing in Spanish; instruction in the field of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; education and educational services in the nature of workshops, classroom instruction, seminars, professional development, and in-service and pre-service training in the field of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; standardized testing in Spanish; preparing, administering and scoring standardized tests; measurement evaluations in the areas of literacy, early literacy skills for educational purposes; providing seminars, training and educational conferences, all of the foregoing in the areas of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; publication of educational books, periodical reports, and teaching materials in the areas of literacy and early literacy skills, monitoring and assessment of student  progress and outcomes; providing on-line instructional, educational,

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

testing and teaching materials in Spanish and distributing course materials in connection therewith in the field of literacy and early literacy skills, monitoring and assessment via the Internet" (the "'205 Application").  The '205 Application was filed on June 3, 2013.  A copy of the '205 Application is hereto as Exhibit C.

30.     The University owns pending U.S. Application Serial No. 85949244 for the mark IDEL for use in International Class 9 in conjunction with "software, including downloadable computer application software for mobile phones, portable media players, tablets and handheld computers, featuring Spanish language testing, teaching, monitoring, professional development, and assessment materials in the field of literacy and early literacy skills;" and, in International Class 41 for "providing Spanish-language instructional and educational testing, teaching, professional development, monitoring, and assessment services in the field of literacy and early literacy skills via the Internet, including downloadable computer application software for mobile phones, portable media players, tablets and handheld computers" (the "'244 Application").  The '244 Application was filed on June 3, 2013.  A copy of the '244 Application is attached hereto as Exhibit D.  The University's '205 and '244 Applications are referred to collectively herein as the "University IDEL Applications" and the marks that are the subject of the University IDEL Applications are referred to herein as the "University IDEL Marks."

31.     The University DIBELS Application and the University IDEL Applications are collectively referred to herein as the "University Applications."

32.     The University DIBELS Mark and the University IDEL Marks are collectively referred to herein as the "University Marks."

33.     The University began using the University DIBELS Mark as a trademark in commerce prior to Counter-Defendants and long before DMG existed as a corporate entity.

34.     Drs. Good and Kaminski used DIBELS on behalf of, and exclusively for, the University long before DMG existed as a corporate entity.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

35.     Prior to its use of the University DIBELS Mark in commerce, the University used DIBELS as a trade name, and/or engaged in the use of DIBELS, analogous to trademark use, and has continuously, substantially and exclusively used DIBELS in association with early language and literacy assessment goods and services.

36.     The University began using the University IDEL Mark as a trademark in commerce prior to Counter-Defendants, and at least as early as July 2003.

37.     Drs. Good and Kaminski used IDEL on behalf of, and exclusively for, the University before filing DMG's application to register the same mark with the USPTO.

38.     Prior to its use of the University IDEL Mark as a trademark, the University used IDEL as a trade name, and/or engaged in the use of IDEL, analogous to trademark use, and has continuously, substantially and exclusively used IDEL in association with early language and literacy assessment goods and services.

39.     The University has developed and enjoys extensive goodwill throughout the United States and the world with respect to its University Marks. The University established this goodwill through the expenditure of substantial sums in advertising and/or promotion of goods and services offered under the University Marks. The University Marks are inherently distinctive and have become widely known to the relevant class of consumers as the source of literacy and early literacy assessment products and services that are based on vetted, theoretically sound, peer-reviewed University research, such that the relevant class of consumers has come to know, rely upon, and associate the University Marks with the University and to recognize it as the source of the early language, literacy and early literacy assessment goods and/or services provided by the University.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

E.     The University's Copyrights

40.     The University owns the copyrights to the University DIBELS and IDEL works ("University Works") and the following registrations for the University Works issued by the United States Copyright Office:

| | Reg./App. No. | Title |
|---|---|---|
| 1 | TX 7-909-203 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Progress Monitoring Phoneme Segmentation Fluency Kindergarten Student Booklet |
| 2 | TX 7-909-202 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Kindergarten Student Booklet Benchmark Early Reading Assessment Mid-Year NWF Option and Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Kindergarten Stimulus Materials Benchmark Early Reading Assessment Mid-Year NWF Option |
| 3 | TX 7-909-200 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS First Grade Scoring Booklet Benchmark Early Reading Assessment With DIBELS Oral Reading Fluency and Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS First Grade Student Materials Benchmark Early Reading Assessment With DIBELS Oral Reading Fluency |
| 4 | TX 7-909-196 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Second Grade Scoring Booklet Benchmark Early Reading Assessment With DIBELS Oral Reading Fluency and Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Second Grade Student Materials Benchmark Early Reading Assessment With DIBELS Oral Reading Fluency |
| 5 | TX 7-909-194 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Third Grade Scoring Booklet Benchmark Early Reading Assessment With DIBELS Oral Reading Fluency and Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Third Grade Student Materials Benchmark Early Reading Assessment With DIBELS Oral Reading Fluency |
| 6 | TX 7-909-183 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Progress Monitoring Nonsense Word Fluency First Grade Scoring Booklet and Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Progress Monitoring Nonsense Word Fluency First Grade Student Materials |

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

| | Reg./App. No. | Title |
|---|---|---|
| 7 | TX 7-909-205 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Progress Monitoring Initial Sound Fluency Kindergarten Scoring Booklet and Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Progress Monitoring Initial Sound Fluency Kindergarten Student Materials |
| 8 | TX 7-909-138 | University of Oregon Early Literacy Project Dynamic Indicators of Basic Early Literacy Skills |
| 9 | TX 7-908-962 | Dynamic Indicators of Basic Early Literacy Skills (DIBELS) with CBM Benchmark Early Reading Assessment Administration and Scoring Guide |
| 10 | TX 7-909-173 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition DIBELS Administration and Scoring Guide |
| 11 | TX 7-909-175 | Primary Prevention of Early Academic Problems University of Oregon CBM-P Letter-Naming Fluency |
| 12 | TX 7-909-177 | Primary Prevention of Early Academic Problems University of Oregon CBM-P Picture-Naming Fluency |
| 13 | TX 7-909-180 | Primary Prevention of Early Academic Problems University of Oregon CBM-P Phonemic Segmentation Fluency |
| 14 | TX 7-915-517 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition |
| 15 | TX 7-915-518 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Kindergarten Scoring Booklet DIBELS Benchmark Assessment and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Kindergarten Student Materials DIBELS Benchmark Assessment |
| 16 | TX 7-915-529 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS First Grade Scoring Booklet DIBELS Benchmark Assessment and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS First Grade Student Materials DIBELS Benchmark Assessment |
| 17 | TX 7-915-525 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Second Grade Scoring Booklet DIBELS Benchmark Assessment and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Second Grade Student Materials DIBELS Benchmark Assessment |
| 18 | TX 7-915-533 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Third Grade Scoring Booklet DIBELS Benchmark Assessment and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Third Grade Student Materials DIBELS Benchmark Assessment |

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

| | Reg./App. No. | Title |
|---|---|---|
| 19 | TX 7-915-521 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Fourth Grade Scoring Booklet DIBELS Benchmark Assessment and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Fourth Grade Student Materials DIBELS Benchmark Assessment |
| 20 | TX 7-915-531 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Fifth Grade Scoring Booklet DIBELS Benchmark Assessment and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Fifth Grade Student Materials DIBELS Benchmark Assessment |
| 21 | TX 7-915-520 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Sixth Grade Scoring Booklet DIBELS Benchmark Assessment and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Sixth Grade Student Materials DIBELS Benchmark Assessment |
| 22 | TX 7-915-532 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring Phoneme Segmentation Fluency Kindergarten Scoring Booklet |
| 23 | TX 7-915-524 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring Nonsense Word Fluency First Grade Scoring Booklet and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring Nonsense Word Fluency First Grade Student Materials |
| 24 | TX 7-915-534 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring Word Use Fluency Kindergarten and First Grade Scoring Booklet |
| 25 | TX 7-915-522 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring Word Use Fluency Second and Third Grade Scoring Booklet |
| 26 | TX 7-915-527 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency First Grade Scoring Booklet and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency First Grade Student Materials |
| 27 | TX 7-915-528 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency Second Grade Scoring Booklet and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency Second Grade Student Materials |

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

| | Reg./App. No. | Title |
|---|---|---|
| 28 | TX 7-915-526 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency Third Grade Scoring Booklet and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency Third Grade Student Materials |
| 29 | TX 7-915-536 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency Fourth Grade Scoring Booklet and Dynamic Indicators of Basic Early Literacy Skills 6th Edition |
| 30 | TX 7-915-537 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency Fifth Grade Scoring Booklet and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency Fifth Grade Student Materials |
| 31 | TX 7-915-538 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency Sixth Grade Scoring Booklet and Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Progress Monitoring DIBELS Oral Reading Fluency Sixth Grade Student Materials |
| 32 | TX 7-915-539 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition |
| 33 | TX 7-915-540 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Revised |
| 34 | TX 7-915-541 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition DIBELS Administration and Scoring Guide |
| 35 | 1-1790599992 | Indicadores Dinámicos del Éxito en la Lectura 6ta Edición |
| 36 | 1-1790600212 | Indicadores Dinámicos del Éxito en la Lectura 7a Edición |

(the "University Copyrights").

F. <u>Counter-Defendants' Unlawful Activities Related to Trademarks</u>

41. DMG's principals, Drs. Good and Kaminski, worked for the University as professors at the University's College of Education. In fact, the two worked directly in the research, development and implementation of the University's DIBELS and IDEL measures. Drs. Good and Kaminski used the University DIBELS Mark and University IDEL Marks on behalf of, and exclusively for, the University before they filed applications to register the DMG

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

Marks with the USPTO in DMG's name. In addition, Drs. Good and Kaminski worked on behalf of the University, along with many others, to train educators on the DIBELS Data System.

42.     Dr. Good worked as an Assistant Professor for the University's College of Education from June 1988 to August 1994. Around September 1994, Dr. Good was promoted to Associate Professor in the University's College of Education. He continuously worked for the University from June 1988 to the present. Dr. Good executed numerous agreements as a condition of his employment whereby he agreed that the intellectual property rights arising from the research funded, developed and implemented by the University, were owned by the University. Dr. Good was one of the many University professors, graduate students, staff and others who worked on, developed and implemented the research related to DIBELS and IDEL on behalf of the University, including research funded by University grants and awards.

43.     Dr. Kaminski worked as a graduate student at the University, and earned her Ph.D in 1992. Dr. Good supervised her graduate work during this time. After earning her Ph.D, Dr. Kaminski has worked for the University since June 16, 1992 in various capacities including as an Assistant Professor, an Adjunct Assistant Professor and as a Courtesy Assistant Professor. Also during this time, Dr. Kaminski executed numerous agreements whereby she agreed that the intellectual property rights arising from research funded, developed and implemented by the University, were owned by the University. Moreover, Dr. Kaminski was one of the many University professors, graduate students and staff who worked on, developed and implemented University research related to DIBELS pursuant to University grants and awards.

44.     Drs. Good and Kaminski assisted a third-party company, Voyager Learning Company, to appropriate the University's intellectual property related to DIBELS, including, U.S. Patent No. 6,676,413 (the "'413 Patent"). The '413 Patent was the subject of litigation in the United States District Court For The Northern District of Texas, EdSoft Software Corp. v. Voyager, Cause No. 3-05CV1463-D, whereby Voyager paid the plaintiff at least $5.4 million

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

dollars to settle the fraudulent patent procurement claim, among others. A copy of the '413 Patent is attached hereto as Exhibit E. A copy of excerpts from Voyager's <u>Vital Indicators of Progress: Technical Guide</u> is attached hereto as Exhibit F. A copy of excerpts from Voyager's Form 10-K for the fiscal year ending December 31, 2005 is attached hereto as Exhibit G. A copy of excerpts from Voyager's Form 10-Q for the quarter ending September 29, 2007 is attached hereto as Exhibit H.

i.     <u>DMG's Trademark Registrations</u>

45.     DMG is identified as the owner of U.S. Trademark Registration No. 2,729,165 for DIBELS in International Class 16 for use in conjunction with "printed instructional, educational and teaching materials in the areas of literacy and early literacy assessment and skills; educational books, periodical reports and printed teaching materials in the areas of literacy skills and early literacy skills, monitoring and assessing student outcomes, skill and progress" (the "'165 Registration"). The '165 Registration issued on June 24, 2003. A copy of the '165 Registration is attached hereto as Exhibit I.

46.     DMG is identified as the owner of U.S. Trademark Registration No. 2,750,275 for DIBELS in International Class 41 for use in conjunction with "providing on-line instructional, educational, testing and teaching materials and distributing course materials in connection therewith in the field of literacy and early literacy skills, monitoring and assessment via a global computer network" (the "'275 Registration"). The '275 Registration issued on August 12, 2003. A copy of the '275 Registration is attached hereto as Exhibit J.

47.     DMG is identified as the owner of U.S. Trademark Registration No. 2,771,559 DIBELS in International Class 41 for use in conjunction with "educational research; educational testing; instruction in the field of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; education and educational services in the nature of workshops,

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

classroom instruction, seminars, professional development, and in-service and pre-service training in the field of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; standardized testing; preparing, administering and scoring standardized tests; measurement evaluations in the areas of literacy, early literacy skills for educational purposes; providing seminars, training and educational conferences, all of the foregoing in the areas of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; publication of educational books, periodical reports, and teaching materials in the areas of literacy and early literacy skills, monitoring and assessment of student progress and outcomes" (the "'559 Registration"). The '559 Registration issued on October 7, 2003. A copy of the '559 Registration is attached hereto as Exhibit K.

48. DMG is identified as the owner of U.S. Trademark Registration No. 3,970,666 for DIBELS NEXT in International Class 16 for use in conjunction with "printed instructional, educational and teaching materials in the areas of literacy and early literacy assessment and skills; educational books, periodical reports and printed teaching materials in the areas of literacy skills and early literacy skills, monitoring and assessing student outcomes, skill and progress;" and in International 41 for "educational research; educational testing; instruction in the field of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; education and educational services in the nature of workshops, classroom instruction, seminars, professional development, and in-service and pre-service training in the field of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; standardized testing; preparing, administering and scoring standardized tests; measurement evaluations in the areas of literacy, early literacy skills for educational purposes; providing seminars, training and educational conferences, all of the foregoing in the areas of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; publication of educational books, periodical reports, and teaching materials in the areas of literacy and early literacy skills,

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

monitoring and assessment of student progress and outcomes; providing on-line instructional, educational, testing and teaching materials and distributing course materials in connection therewith in the field of literacy and early literacy skills, monitoring and assessment via a global computer network" (the "'666 Registration"). The '666 Registration issued on May 31, 2011. A copy of the '666 Registration is attached hereto as Exhibit L.

49.     DMG is identified as the owner of U.S. Trademark Registration No. 4,084,850 for DIBELS NEXT in International Class 9 for use in conjunction with "computer software for instructional and educational testing" (the "'850 Registration"). The '850 Registration issued on January 10, 2012. A copy of the '850 Registration is attached hereto as Exhibit M.

50.     DMG is identified as the owner of U.S. Trademark Registration No. 4,164,609 for DIBELSNET in International Class 42 for use in conjunction with "providing online non-downloadable software for monitoring and assessment data reporting services in the area of literacy and early literacy skills" (the "'609 Registration"). The '609 Registration issued on June 26, 2012. A copy of the '608 Registration is attached hereto as Exhibit N.

51.     The '165 Registration, the '275 Registration, the '559 Registration, the '666 Registration, the '850 Registration, and the '609 Registration are collectively referred to herein as the "DMG DIBELS Registrations."

52.     The marks that are the subject of the '165 Registration, the '275 Registration, the '559 Registration, the '666 Registration, the '850 Registration, and the '609 Registration are collectively referred to herein as the "DMG DIBELS Marks."

53.     DMG is identified as the owner of U.S. Trademark Registration No. 3,446,832 for IDEL (the "DMG IDEL Mark") in International Class 16 for use in conjunction with "printed instructional, educational and teaching materials in the areas of literacy and early literacy assessment and skills in Spanish; educational books, periodical reports and printed teaching materials in the areas of literacy skills and early literacy skills, monitoring and assessing student

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

outcomes, skill and progress;" and, in International Class 41 for "educational research; educational testing in Spanish; instruction in the field of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; education and educational services in the nature of workshops, classroom instruction, seminars, professional development, and in-service and pre-service training in the field of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; standardized testing in Spanish; preparing, administering and scoring standardized tests; measurement evaluations in the areas of literacy, early literacy skills for educational purposes; providing seminars, training and educational conferences, all of the foregoing in the areas of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; publication of educational books, periodical reports, and teaching materials in the areas of literacy and early literacy skills, monitoring and assessment of student progress and outcomes; providing on-line instructional, educational, testing and teaching materials in Spanish and distributing course materials in connection therewith in the field of literacy and early literacy skills, monitoring and assessment via the Internet" (the "'832 Registration").  The '832 Registration issued on June 10, 2008 (the "DMG IDEL Registration").  A copy of the DMG IDEL Registration is attached hereto as Exhibit O.

54.    Counter-Defendants filed DMG's intent-to-use application for the DMG IDEL Mark, Ser. No. 78871475 (the "'475 Application") on April 27, 2006.  Counter-Defendants claim DMG first used the IDEL Mark in commerce at least as early as January 18, 2005.  Counter-Defendants have not filed an Affidavit of Incontestability for this mark under 15 U.S.C. § 1065 of the Trademark Act.  A copy of the '475 Application is attached hereto as Exhibit P.

55.    The DMG DIBELS Registrations and the DMG IDEL Registration are collectively referred to herein as the "DMG Registrations."

56.    The DMG DIBELS Marks and the DMG IDEL Mark are collectively referred to herein as the "DMG Marks."

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

ii.    <u>Counter-Defendants' Fraud Related to DIBELS Registrations</u>

57.    Counter-Defendants fraudulently procured, maintained and renewed the DMG DIBELS Registrations by willfully making false representations of material fact in the trademark applications, maintenance forms, and renewal forms for the DMG DIBELS Registrations.

58.    Counter-Defendants willfully made false material misrepresentations in the applications to register the DMG DIBELS Registrations.    Counter-Defendants executed numerous declarations under 18 U.S.C. § 1001 when it filed its applications to register the DMG DIBELS Registrations with knowledge that:    (1) DMG was not the owner of the DMG DIBELS Marks; (2) DMG was not using the DIBELS mark in commerce; (3) DMG was not entitled to use the DIBELS mark in commerce; (4) the University was previously using and had the prior right to use DIBELS in commerce; and, (5) the statements in the declarations for the applications to register the DMG DIBELS Registrations were not true.

59.    Counter-Defendants knew that the University previously, substantially, continuously and exclusively used the DIBELS mark in commerce when Counter-Defendants filed the use-based applications to register the '165, '559 and '275 Marks in DMG's name.

60.    Counter-Defendants knew that DMG was not using the DIBELS mark in commerce when Counter-Defendants filed their use-based applications to register the '165, '559 and '275 Marks in DMG's name.    Because DMG was not using the DIBELS mark when it filed its trademark applications, there was no evidence for DMG to submit to the USPTO as a specimen of DMG's use in commerce.

61.    Having no evidence of its own use of DIBELS and to induce the USPTO to issue trademark registrations for DMG's '165, '559, and '275 Marks, Counter-Defendants submitted evidence of the University's use of DIBELS to show DMG's use in commerce.

PAGE 41 -  ANSWER, AFFIRMATIVE DEFENSES AND
               COUNTERCLAIMS

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

62.     On February 13, 2002, Counter-Defendants fraudulently filed DMG's application to register the '165 Mark for DIBELS by submitting a specimen of use to the USPTO that evidences the University's use of DIBELS on the University's website at http://dibels.uoregon.edu/. A copy of the specimen submitted by DMG to the USPTO on February 13, 2002 in support of the '165 Mark is attached hereto as Exhibit Q.

63.     Counter-Defendants did not submit any evidence with the application to register the '165 Mark to support DMG's use in commerce, other than the evidence demonstrating the use of DIBELS by the University on the University's website at http://dibels.uoregon.edu/.

64.     Also on February 13, 2002, Counter-Defendants fraudulently filed the applications to register the '559 and '275 Marks for DIBELS by submitting the webpages from the University's website at http://dibels.uoregon.edu/measures/materials.php to the USPTO as evidence of its own use in commerce. A copy of the specimen submitted by DMG to the USPTO on February 13, 2002 in support of the '559 Mark is attached hereto as Exhibit R. A copy of the specimen submitted by DMG to the USPTO on February 13, 2002 in support of the '275 Mark is attached hereto as Exhibit S.

65.     Counter-Defendants did not submit any evidence with the applications to register the '559 and '275 Marks to support DMG's use in commerce, other than the evidence demonstrating the use of DIBELS by the University on the University's website at http://dibels.uoregon.edu/measures/materials.php.

66.     Counter-Defendants' applications to register the '666 and '850 Marks for DIBELS NEXT expressly rely upon Counter-Defendants' fraudulently filed applications to register the '165, '559 and '275 Marks, and wholly incorporate the University DIBELS Mark. A copy of DMG's application to register the '666 Mark, Ser. No. 85156381, is attached hereto as Exhibit T. A copy of DMG's application to register the '850 Mark is attached hereto as Exhibit U.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

67.     Counter-Defendants' application to register DMG's '609 Mark for DIBELSNET expressly relies on the '666 Mark and wholly incorporates the University DIBELS Mark.  A copy of DMG's application to register the '609 Mark, Ser. No. 85463933, is attached hereto as Exhibit V.

68.     Counter-Defendants then continued to willfully make false representations of material fact in the trademark maintenance and renewal forms filed in support of the DMG DIBELS Registrations by stating that DMG owned the DIBELS mark.

69.     On July 25, 2008, Counter-Defendants fraudulently submitted DMG's Combined Declaration of Use and Incontestability under Sections 8 and 15 of the Trademark Act for the '165 Mark for DIBELS by executing a declaration stating that DMG was the owner of the DIBELS mark, when it was and is not the owner.  A copy of the specimen submitted by DMG to the USPTO on May 1, 2008 in support of the '165 Mark is attached hereto as Exhibit W.

70.     On October 7, 2008, Counter-Defendants fraudulently submitted DMG's Combined Declaration of Use and Incontestability under Sections 8 and 15 of the Trademark Act for the '559 Mark for DIBELS by executing a declaration stating that DMG was the owner of the DIBELS mark, when it was and is not the owner.  A copy of the specimen submitted by DMG to the USPTO on July 17, 2008 in support of the '559 Mark is attached hereto as Exhibit X.

71.     On August 12, 2008, Counter-Defendants fraudulently submitted DMG's Combined Declaration of Use and Incontestability under Sections 8 and 15 of the Trademark Act for the '275 Mark for DIBELS by executing a declaration stating that DMG was the owner of the DIBELS mark, when it was and is not the owner.  A copy of the specimen submitted by DMG to the USPTO on June 18, 2008 in support of the '275 Mark is attached hereto as Exhibit Y.

72.     Counter-Defendants knew of the University's prior ownership and use of the DIBELS mark because its co-founders, Drs. Good and Kaminski, worked at the University's College of Education, directly in the University's DIBELS program as researchers and trainers,

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

prior to, during, and after filing the applications to register the DMG DIBELS Registrations. Printouts from the University's 2001 website are attached hereto as Exhibit Z.

73. In addition, Dr. Good admitted to DMG's fraudulent activities in his April 20, 2007 testimony under oath before the United States House of Representatives Committee on Education and Labor. Dr. Good was subpoenaed to appear before this Committee to testify regarding his unlawful activities related to the federal funding of DIBELS under the No Child Left Behind Act and the Reading First Program. Among other things, Dr. Good testified that DMG appropriated taxpayer money, including grants awarded to the University, in order to privately profit from the University's research and development:

> [CONGRESSWOMAN] SHEA-PORTER: So, in other words, it was federal money, taxpayer's money, that created the base upon which you created your company [DMG].
>
> [DR] ROLAND GOOD: Yes. Federal funds created the knowledge base, the technology that we used to apply to develop the specific form that is DIBELS 6th edition . . . .

Dr. Good further conceded that the University refused to allow Counter-Defendants to have control over the DIBELS educational materials:

> [CONGRESSWOMAN] SHEA-PORTER: Why your company is yours [sic] instead of belonging to those who paid for it, why you did not [sic] keep it inside the university or inside a setting that would give access and continue to develop it based on the fact that the American people paid for this?
>
> [DR.] ROLAND GOOD: The American people paid for the development of the knowledge. We created that knowledge, and we made that freely and publicly available for people to use, and others are using that knowledge as well.
>
> We created Dynamic Measurement Group in part to protect our ability to give the measures away for free. When we talked with the University of Oregon and about our desire to have control over publication of it, they were not interested in making that assurance . . . .

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

Dr. Good also admitted that the University previously used and owned the University DIBELS Mark. In addition, Dr. Good admitted that he had knowledge of the University's prior use and ownership of the University DIBELS Mark when Counter-Defendants executed and filed declarations in support of the trademark application, maintenance and renewal forms for the DMG DIBELS Registrations. A copy of transcript excerpts of Dr. Good's 2007 United States House of Representatives Committee on Education and Labor testimony is attached hereto as Exhibit AA.

74. Counter-Defendants filed DMG's applications to register the DIBELS mark with knowledge that they were falsely and fraudulently claiming the University's use of DIBELS as their own.

75. Counter-Defendants knew that the University owned the University DIBELS Mark, and had previously used DIBELS in commerce throughout the United States long before DMG existed as a corporate entity. A copy of a printout from the Oregon Secretary of State website is attached hereto as Exhibit BB. Copies of the University's historical webpage printouts are attached hereto as Exhibit CC.

76. Counter-Defendants knew that the University was continuing to use the University DIBELS Mark in commerce when Counter-Defendants filed DMG's applications to register its DMG DIBELS Marks for confusingly similar goods/services.

77. Counter-Defendants knew that the University owned and was using the University DIBELS Mark in commerce when Counter-Defendants filed DMG's trademark maintenance and renewal forms for the DMG DIBELS Registrations. Counter-Defendants nevertheless executed these declarations with the knowledge and belief that the statements in the declaration were false.

78. Counter-Defendants made false statements in support of the trademark application, maintenance and renewal forms for the DMG DIBELS Registrations with the intent to deceive the USPTO, to induce the USPTO to grant Counter-Defendants' applications to

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

register the DMG DIBELS Marks, and to induce the USPTO to maintain and/or renew the DMG DIBELS Registrations. The USPTO reasonably relied upon the truth of Counter-Defendants' false statements when it granted Counter-Defendants' applications to register the DMG DIBELS Marks, and when it agreed to maintain and/or renew the DMG DIBELS Registrations. Yet, because Counter-Defendants incorrectly identified DMG as the owner in the applications to register the DMG DIBELS Registrations, the DMG DIBELS Registrations are void ab initio.

iii. Counter-Defendants' Fraud Related to IDEL Registration

79. Long before DMG, the University substantially, continuously, and exclusively used the University IDEL Mark in commerce throughout the United States, and the University continues to use the University IDEL Mark in commerce throughout the United States and the world.

80. Counter-Defendants fraudulently procured the DMG IDEL Registration by willfully making false representations of material fact in Counter-Defendants' supporting declarations for the trademark application and Statement of Use for the DMG IDEL Mark.

81. Counter-Defendants willfully made false material misstatements in Counter-Defendants' application to register the DMG IDEL Mark, by executing the supporting declaration, under notice of 18 U.S.C. § 1001, with willful knowledge that: (1) DMG was not the owner of the DMG IDEL Mark; (2) DMG was not entitled to use the IDEL mark in commerce; (3) the University was using and had the prior right to use the IDEL trademark in commerce; and (4) that the statements in the declaration in support of the application to register the DMG IDEL Registration were not true.

82. Counter-Defendants knew that the University previously, substantially, continuously and exclusively used the University IDEL Mark in commerce when DMG filed an intent-to-use application to register the DMG IDEL Mark on April 27, 2006. Nevertheless,

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

Counter-Defendants fraudulently filed the application to register the DMG IDEL Mark in DMG's name.

83.     Counter-Defendants willfully made false material misstatements in the Statement of Use for the DMG IDEL Mark, by executing the supporting declaration, under notice of 18 U.S.C. § 1001, with knowledge that DMG was not the owner of this mark.

84.     Counter-Defendants knew of the University's prior ownership and use of the IDEL mark since at least July 2003, because DMG's co-founders, Drs. Good and Kaminski, worked as professors at the University's College of Education, directly in and/or in close association with the University's IDEL program as researchers and trainers, prior to, during, and after Counter-Defendants' filing of the application to register the DMG IDEL Mark.  Printouts from the University's 2003 website are attached hereto as Exhibit DD and Exhibit EE.

85.     It is Dr. Kaminski, acting as the president of DMG in 2006, who signed the application to register the IDEL trademark on behalf of DMG.

86.     Moreover, Dr. Good is credited with editing the University's 2003 IDEL assessment booklet, offered on the University's website at http://dibels.uoregon.edu, long before DMG's filing of the application to register the DMG IDEL Mark in 2006.  A copy of the University's 2003 IDEL assessment booklet is attached hereto as Exhibit FF.

87.     Counter-Defendants nevertheless signed the declaration in support of DMG's application to register the DMG IDEL Mark and the supporting Statement of Use with knowledge that the statements were false.

88.     Counter-Defendants made these false statements with the intent to deceive the USPTO and to induce the USPTO to grant Counter-Defendants' application to register the IDEL mark.  The USPTO reasonably relied upon the truth of Counter-Defendants' false statements when it granted Counter-Defendants' application to register the IDEL mark.  Yet, because

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

Counter-Defendants was incorrectly identified DMG as the owner in the applications to register the DMG IDEL Registration, this registration is void ab initio.

### G. DIBELS NEXT, DIBELSNET and Harm to Public

89.    To compete with the University's highly regarded DIBELS assessment measures and DIBELS Data System, Counter-Defendants recently developed and implemented DMG's own early language and literacy assessments and web-based data assessment system.

90.    Counter-Defendants call DMG's new assessments DIBELS NEXT, and call the web-based data assessment system, DIBELSNET (the "DIBELS NEXT products and services").

91.    Despite Counter-Defendants' appropriation of the DIBELS moniker, the initial research for DIBELS NEXT products and services was not conducted by the University.

92.    Unlike the University's DIBELS products and services that have been subject to over a decade of peer review, DMG's DIBELS NEXT benchmark achievement standards are based on flawed research results generated from DMG's unsound, unvetted research methodology.

93.    DIBELS NEXT benchmark achievement standards and decision rules are based on a small, homogenous student sample comprised of a high percentage of Caucasian and economically privileged students, who have a low rate of reading disabilities.

94.    Due to the sample population, the DIBELS NEXT benchmark achievement standards and decision rules set entirely erroneous standards for educational decision making.

95.    Unlike the University's DIBELS products and services, Counter-Defendants' DIBELS NEXT products and services misinform educators regarding their students' reading ability and fail to identify those students who need intensive reading skills intervention.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

96.     In advertisements and written materials, Counter-Defendants falsely state that students who meet the DIBELS NEXT benchmark achievement standards are very likely to pass high-stakes end of year examinations.

97.     Counter-Defendants also falsely advertise and promote that educators do not have to follow-up or give intensive individualized instruction to students who satisfy the DIBELS NEXT benchmark goals.

98.     The DIBELS NEXT assessments erroneously conclude that certain students satisfy achievement standards when, in fact, these students require additional support and substantial reading intervention.

99.     This travesty is compounded by the fact that educators also will be incorrectly evaluated on the DIBELS NEXT scores of their students through another DMG product called DIBELS AD, an acronym for DIBELS for Accountability Decisions.

100.    The DIBELS NEXT products and services have harmed the public, and will continue to harm the public.

101.    Moreover, because Counter-Defendants' DIBELS NEXT and DIBELSNET marks wholly incorporate the University's DIBELS mark—the public will be deceived into thinking that the DIBELS NEXT products and services are based upon the same rigorous research criteria, methodology, and peer review as the University's DIBELS products and services when they are not.

H.    Likelihood of Confusion

102.    Counter-Defendants, through DMG, now directly compete with the University in the field of early language and literacy assessment.

103.    The DMG Marks are identical and/or confusingly similar in sight, sound and commercial impression to the pre-existing University Marks.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

104. The goods and services listed in the DMG DIBELS Registrations are the same or confusingly similar to the goods and services listed in the University DIBELS Application.

105. The goods and services listed in the DMG IDEL Registration are the same or confusingly similar to the goods and services listed in the University IDEL Applications.

106. Due to the similarity between the parties' marks, the similarity of goods/services of the respective parties, and the identical channels of trade, there exists a likelihood of confusion among consumers of the goods and services.

107. In fact, since its introduction of DIBELS NEXT products and services in the marketplace in 2010, the University has recorded over one thousand instances of actual consumer confusion.

I.    Counter-Defendants' Unlawful Activities Related to Copyrights

108. Long after Dr. Good's 2007 U.S. House of Representatives Committee testimony conceding the University to be the source of DIBELS and as alleged in paragraph 127 of the Complaint, Counter-Defendants fraudulently procured the following copyright registrations for the University Works:

|   | Reg. No. | Title |
|---|----------|-------|
| 1 | TXu001619550 | Dynamic Indicators of Basic Early Literacy Skills 5th Edition |
| 2 | TX0006989890 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition First Grade Scoring Booklet Progress Monitoring Nonsense Word Fluency |
| 3 | TX0006989892 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition First Grade Scoring Booklet Progress Monitoring Oral Reading Fluency |
| 4 | TX0006989894 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Kindergarten Scoring Booklet Progress Monitoring Initial Sound Fluency |

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

| | Reg. No. | Title |
|---|---|---|
| 5 | TX0006989900 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Administration and Scoring Guide |
| 6 | TX0006989907 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition First Grade Student Materials Progress Monitoring Oral Reading Fluency |
| 7 | TX0006989918 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition First Grade Student Materials Benchmark Assessment |
| 8 | TX0006996893 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Kindergarten Student Materials Progress Monitoring Initial Sound Fluency |
| 9 | TX0006997739 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition First Grade Student Materials Progress Monitoring Nonsense Word Fluency |
| 10 | TX0006997742 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Kindergarten and First Grade Scoring Booklet Progress Monitoring Word Use Fluency |
| 11 | TX0006997749 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Kindergarten Scoring Booklet Progress Monitoring Phoneme Segmentation Fluency |
| 12 | TX0006997758 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Kindergarten Students Materials Benchmark Assessment |
| 13 | TX0006993535 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Third Grade Student Materials Progress Monitoring Oral Reading Fluency |
| 14 | TX0006993530 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Second Grade Student Materials Progress Monitoring Oral Reading Fluency |
| 15 | TX0006993539 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Second Grade Student Materials Benchmark Assessment |
| 16 | TX0006993542 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Third Grade Student Materials Benchmark Assessment |
| 17 | TX0006993548 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Third Grade Scoring Booklet Progress Monitoring Oral Reading Fluency |

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

| | Reg. No. | Title |
|---|---|---|
| 18 | TX0006993551 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Second Grade Scoring Booklet Benchmark Assessment |
| 19 | TX0006993555 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Second and Third Grade Scoring Booklet Progress Monitoring Word Use Fluency |
| 20 | TX0006993557 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Second Grade Scoring Booklet Progress Monitoring Oral Reading Fluency |
| 21 | TX0006993564 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Third Grade Scoring Booklet Benchmark Assessment |
| 22 | TX0006993559 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Fifth Grade Scoring Booklet Progress Monitoring Oral Reading Fluency |
| 23 | TX0006989913 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition First Grade Scoring Booklet Benchmark Assessment |
| 24 | TX0006993376 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Fourth Grade Student Materials Progress Monitoring Oral Reading Fluency |
| 25 | TX0006993377 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Fourth Grade Student Materials Benchmark Assessment |
| 26 | TX0006993536 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Fifth Grade Student Materials Benchmark Assessment |
| 27 | TX0006993541 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Fifth Grade Student Materials Progress Monitoring Oral Reading Fluency |
| 28 | TX0006993547 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Sixth Grade Student Materials Progress Monitoring Oral Reading Fluency |
| 29 | TX0006993550 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Sixth Grade Student Materials Benchmark Assessment |
| 30 | TX0006993554 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Fourth Grade Scoring Booklet Benchmark Assessment |
| 31 | TX0006993575 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Fifth Grade Scoring Booklet Benchmark Assessment |

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

| | Reg. No. | Title |
|---|---|---|
| 32 | TX0006993576 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Sixth Grade Scoring Booklet Benchmark Assessment |
| 33 | TX0006993583 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Sixth Grade Scoring Booklet Progress Monitoring Oral Reading Fluency |
| 34 | TX0006993589 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Kindergarten Scoring Booklet Benchmark Assessment |
| 35 | TX0006993593 | Dynamic Indicators of Basic Early Literacy Skills 6th Edition Fourth Grade Scoring Booklet Progress Monitoring Oral Reading Fluency |

(the "DMG Copyrights").

109.    The University Works were authored and are owned by the University pursuant to Oregon State regulations, University regulations, University directives, federal government research grant terms, the work for hire doctrine and/or the terms of executed contracts.

110.    It is indisputable that, throughout their tenure at the University, Drs. Good and Kaminski knew that the University owned and was entitled to own the intellectual property arising from University resources and/or government grants pursuant to Oregon State regulations, University regulations, and University directives.  In fact, Drs. Good and Kaminski executed numerous agreements whereby they agreed to comply with these Oregon State regulations, University regulations, and University directives by, among other things, agreeing to assign any intellectual property rights arising from University resources to the University as a condition of their work at the University.

111.    Drs. Good and Kaminski did not comply with the law or their contractual obligations.  Instead, Drs. Good and Kaminski falsely stated in the copyright applications  for the DMG Copyrights that DMG owned the underlying University Works in order to induce the Copyright Office to register the DMG Copyrights in DMG's name.

PAGE 53 -  ANSWER, AFFIRMATIVE DEFENSES AND
                    COUNTERCLAIMS

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

112.    As such, Counter-Defendants procured the DMG Copyrights by knowingly making false representations of material fact to the Copyright Office, with the intent to deceive the Copyright Office and to induce the Copyright Office to register the copyrights for the University Works to DMG.

113.    The Copyright Office reasonably relied upon the truth of Counter-Defendants' false statements when it granted Counter-Defendants' applications to register the DMG Copyrights.

114.    After fraudulently procuring copyright registrations for works funded by the American public, Drs. Good and Kaminski now assert the DMG Copyrights against their own University colleagues who were expressly credited as authors of the underlying University Works.

J.      Counter-Defendants' Unlawful Activities Related to Education Use Agreement

115.    Drs. Good and Kaminski's systematic, unlawful activities were not limited to their fraudulent procurement of intellectual property registrations.  Among other things, the two used their roles as trusted faculty to systematically misappropriate government funded intellectual property.

116.    Drs. Good and Kaminski not only provided DIBELS training on behalf of the University, but also were the two principal faculty entrusted by the University to manage the research, development, and implementation of DIBELS and IDEL at the University—including the management of University employees, the DDS online assessment tool and the University DIBELS website.

117.    In 2003, without authorization by the University, Drs. Good and Kaminski unlawfully used their positions as trusted faculty to replace the DIBELS 5th Edition and DIBELS 6th Edition Education Use Agreement crediting the University with the development of the

PAGE 54 -  ANSWER, AFFIRMATIVE DEFENSES AND
                        COUNTERCLAIMS

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

DIBELS measures—with an Education Agreement that removed any reference to the University and solely credited their own company, DMG.

118.     Drs. Good and Kaminski used their positions as trusted faculty and supervisors to instruct University employees to upload and maintain DMG's unlawful Education Use Agreement until the University removed it from its website.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement and False Designation of Origin under the Lanham Act § 43(a))

119.     The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 118 above.

120.     The University owns all rights, title, and interest in and to, and holds the first, superior and exclusive rights to use University Marks in conjunction with early language and literacy assessment goods/services.

121.     The University gained prior state and nationwide common law rights in the DIBELS mark in conjunction with early language assessment goods/services long before the registration dates of the DMG DIBELS Registrations.  The University has continuously used the University Marks in commerce in conjunction with early language assessment goods/services and continues to use these marks in commerce in association with these goods/services.

122.     The University DIBELS Mark and the University IDEL Marks are inherently distinctive and/or have acquired secondary meaning.

123.     Without permission, authority, or license from the University, Counter-Defendants have been offering for sale, distributing, and/or selling in commerce, over the Internet in this District and elsewhere, early language and literacy assessment goods/services under the DIBELS and IDEL brands, which are confusingly similar to the University's well

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

known and long-standing established trademarks. Drs. Good and Kaminski have personally taken part in these infringing activities and specifically directed others to do so.

124. Counter-Defendants' unauthorized use of the DMG Marks infringes on the valid prior trademark rights established by the University prior to the issuance of the DMG Registrations.

125. Counter-Defendants' unauthorized use of DIBELS and IDEL in conjunction with early language and literacy assessment goods/services damages and dilutes the goodwill and reputation of the University in its trademarks and interferes with and reduces sales of the University's DIBELS and IDEL goods/services. Counter-Defendants' conduct also damages the relationship and goodwill the University enjoys with its consumers.

126. Counter-Defendants knew that its adoption, commencement of use in commerce, and continuing use of the University's DIBELS and IDEL trademarks in connection with early language and literacy assessment goods/services would cause confusion, mistake, or deception among purchasers, users, and the public.

127. Counter-Defendants knew of the University's prior use of the University Marks. By adopting, commencing to use, and continuing to use the University's DIBELS and IDEL trademarks, Counter-Defendants intended to induce, did induce and will continue to induce customers to purchase early language and literacy assessment goods/services by trading off of the extensive goodwill and reputation built up by the University in its University Marks.

128. Counter-Defendants' acts constitute false descriptions, false designations, false representations of origin, and false advertising in interstate commerce, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

129. Counter-Defendants' conduct has been knowing, deliberate, willful, and intended to cause confusion, or to cause mistake or to deceive in violation of the University's rights.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

130. The foregoing actions of Counter-Defendants have confused and are likely to continue to confuse the public, and constitute a false designation of origin and a false or misleading description or representation in violation of, and violate the University's rights under, section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

131. Counter-Defendants' wrongful conduct, as averred above, has permitted and will permit them to make substantial sales and profits on the strength of the University's reputation, marketing, advertising, sales, and consumer recognition. The University seeks an accounting of Counter-Defendants' profits and further requests that the Court increase the award of Counter-Defendants' profits to the University in an amount in the Court's discretion.

132. As a direct and proximate result of Counter-Defendants' wrongful conduct, as averred above, the University has been and will be deprived of substantial sales of its early language and literacy assessment services in an amount as yet unknown but to be determined at trial, and has been and will be deprived of the value of its University Marks as a commercial asset, in an amount as yet unknown but to be determined at trial. The University seeks its actual damages, and requests that the Court grant the University three times the amount of its actual damages in the Court's discretion.

133. The University and the public have suffered and continues to suffer irreparable harm as a result of Counter-Defendants' conduct, and that harm will continue unless the Court enjoins Counter-Defendants' conduct. This harm constitutes an injury for which the University has no adequate remedy at law.

134. Pursuant to 15 U.S.C. § 1118, the University asks the court for an order forcing Counter-Defendants and their licensees to deliver up for destruction all materials in Counter-Defendants' possession that infringe upon the University's rights.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

**SECOND CLAIM FOR RELIEF**
**(Cancellation of Trademark Registrations Under the Lanham Act § 38)**

135.    The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 134 above.

136.    DMG applied for and fraudulently obtained the DMG Registrations. Statements made in each application, statement of use, maintenance forms and/or renewal forms for the DMG Registrations, were false, and known in fact by Counter-Defendants to be false at the time these statements were made.

137.    Counter-Defendants fraudulently procured the DMG IDEL Registration by willfully making false representations of material fact in its DMG IDEL Mark trademark application and Statement of Use. Counter-Defendants also fraudulently procured, maintained, and renewed the DMG DIBELS Registrations by willfully making false representations of material fact in its trademark applications, maintenance forms, and renewal forms for the DMG DIBELS Registrations.

138.    Counter-Defendants willfully made these materially false statements with the intent to:  (1) deceive the USPTO; (2) induce the USPTO to grant DMG's applications for the DMG DIBELS Registrations and the DMG IDEL Registration; (3) induce the USPTO to maintain the DMG DIBELS Registrations; and/or, (4) induce the USPTO to renew the DMG DIBELS Registrations. The USPTO reasonably relied upon the truth of Counter-Defendants' false statements, granted Counter-Defendants' applications for the DMG Registrations, and allowed the continued registration of the DMG Registrations.

139.    The DMG Registrations also were obtained contrary to Section 1052 and 1064 of the Lanham Act because the marks registered to DMG under the DMG Registrations are being used by or with DMG's permission in a manner so as to misrepresent the source of goods or services being offered in connection with the IDEL and DIBELS trademarks.

PAGE 58 -  ANSWER, AFFIRMATIVE DEFENSES AND
           COUNTERCLAIMS

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

140. Counter-Defendants' use of the DMG Marks infringes on the valid prior trademark rights established at common law by the University prior to the filing of the applications to register the DMG Registrations.

141. The University has been harmed by the DMG Registrations. Each of the DMG Registrations is required to be cancelled under 15 U.S.C. §§ 1064 and 1119. DMG is liable for the University's damages under 15 U.S.C. § 1120.

## THIRD CLAIM FOR RELIEF
### (Declaratory Relief of Prior Common Law Trademark Use)

142. The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 141 above.

143. The University is the prior, senior user of the University Marks in intrastate and interstate commerce, in connection with early childhood literacy assessment good/services.

144. An actual, substantial and justiciable controversy exists between the parties with respect to the University Marks. The University contends that it is the prior, senior user and owner of the University Marks, and further contends that DMG is using the University Marks in violation of the University's rights under the Lanham Act and at common law. Counter-Defendants dispute the University's contentions.

145. The University is entitled to a declaratory judgment that it is the prior, senior user of the University Marks in intrastate and interstate commerce, that is owns common law rights in the University Marks in all states and territories in the United States as the prior user, and that Counter-Defendants have violated the University's rights in the University's Marks under the Lanham Act and at common law.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## FOURTH CLAIM FOR RELIEF
### (Copyright Infringement)

146.    The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 145 above.

147.    The University Works are comprised of original material that is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 et seq.

148.    Without consent, authorization, approval, or license, the Counter-Defendants knowingly, willingly, and unlawfully copied, prepared, published, and distributed the University Works, portions thereof, and/or derivative works, and continue to do so.  Counter-Defendants' activities infringe the University's Copyrights.

149.    Upon information and belief, the Counter-Defendants have entered into numerous licensing agreements with third parties who use the University Works and/or copyrightable portions of the University Works.  These licensing agreements and uses are not authorized by the University.  The Counter-Defendants have thus induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing and assisting others to use, copy and distribute the University Works, and/or works derived therefrom.

150.    The Counter-Defendants' direct and induced infringements are and have been knowing and willful.

151.    By this unlawful copying, use, and distribution, the Counter-Defendants have violated the University's exclusive rights under 17. U.S.C. § 106.

152.    The Counter-Defendants have realized unjust profits, gains and advantages as a proximate result of its infringement.

153.    The Counter-Defendants will continue to realize unjust profits, gains and advantages as a proximate result of its infringement as long as such infringement is permitted to continue.

PAGE 60 -  ANSWER, AFFIRMATIVE DEFENSES AND
             COUNTERCLAIMS

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

154.     The University is entitled to an injunction restraining the Counter-Defendants from engaging in any further such acts in violation of the United States copyright laws.  Unless the Counter-Defendants are enjoined and prohibited from infringing the University Copyrights, inducing others to infringe the University Copyrights, and unless all infringing products and advertising materials are seized, the Counter-Defendants will continue to intentionally infringe and induce infringement of the University Copyrights.

155.     As a direct and proximate result of the Counter-Defendants direct and indirect willful copyright infringement, the University has suffered, and will continue to suffer, monetary loss to its business, reputation and goodwill.  The University is entitled to recover from the Counter-Defendants, in amounts to be determined at trial, the damages sustained and will sustain, and any gains, profits and advantages obtained by the Counter-Defendants as a result of Counter-Defendants acts of infringement and Counter-Defendant's use and publication of the copies of the University Works.

## FIFTH CLAIM FOR RELIEF
### (Declaratory Relief of Invalidity and/or Non-Infringement of Copyright)

156.     The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 155 above.

157.     There is an actual controversy between the University and the Counter-Defendants regarding the validity of the DMG Copyrights and the adequacy of these registrations to support an action for infringement.

158.     The University desires a judicial determination that the DMG Copyrights are not valid or entitled to a presumption of validity for the contents of the supporting registration applications pursuant to 17 U.S.C. § 410(c)(requiring a work to be registered within five years of first publication to enjoy the presumption of validity).   The Complaint concedes that the

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

applications to register the DMG Copyrights were filed more than five years from the date of first publication.

159.     The University seeks a judicial determination that the DMG Copyrights lack validity and are insufficient to support claims for infringement against the University Defendants.

160.     The University also seeks a judicial determination that the DMG Copyrights are invalid and/or unenforceable because DMG failed to comply with the registration requirements of 17 U.S.C. § 409 and 37 C.F.R. § 202.3.  In particular, the DMG Copyright Registrations failed to disclose that the subject works were not owned by DMG, that DMG did not obtain lawful assignments from all contributors to the subject works, and that the subject works were works for hire owned by the University.

161.     Accordingly, the University seeks a declaratory judgment that the DMG Copyrights are:  (1) are not entitled to a presumption of validity; (2) invalid due to DMG's failure to comply with the disclosure requirements of 17 U.S.C. § 409 and 37 C.F.R. § 202.3; and (3) insufficient to support an infringement action.

### SIXTH CLAIM FOR RELIEF
**(Common Law Trademark Infringement and Unfair Competition)**

162.     The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 161 above.

163.     Counter-Defendants' acts constitute common law trademark infringement and unfair competition, and have created and will continue to create a likelihood of confusion to the irreparable injury of the University.  The University has no adequate remedy at law for this injury.

PAGE 62 -  ANSWER, AFFIRMATIVE DEFENSES AND
                    COUNTERCLAIMS

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

164.    Counter-Defendants acted with full knowledge of the University's use of, and common law rights to, the University's Marks and without regard to the likelihood of confusion of the public resulting from Defendants' activities.

165.    Counter-Defendants actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the University DIBELS Mark and the University IDEL Marks to the great and irreparable injury of the University.

166.    As a result of Counter-Defendants' acts, the University has been damaged in an amount not yet determined or ascertainable.  At a minimum, the University is entitled to injunctive relief, to an accounting of Counter-Defendants' profits, damages and costs.

**SEVENTH CLAIM FOR RELIEF**
**(Conversion)**

167.    The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 166 above.

168.    By the actions and omissions described above, Counter-Defendants intentionally took possession or control of University intellectual property and resources as well as the ill-gotten gains of funds belonging to the University, and did not return them but instead kept them for their own use and/or transferred them to other persons, who were not acting in the interests of the University, for other uses.

169.    Counter-Defendants' intentional conversion of the funds was inconsistent with, and seriously interfered with, the rights of the University in its intellectual property and in University resources.

170.    As a direct and proximate result of Counter-Defendants' conversion, the University has been damaged in an amount not yet determined or ascertainable.  At a minimum, the University is entitled to injunctive relief, to an accounting of Counter-Defendants' profits, damages, and costs.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## EIGHTH CLAIM FOR RELIEF
### (Breach of Contract and Covenants of Good Faith and Fair Dealing)

171.    The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 170 above.

172.    As a condition of their work at the University, Dr. Good and Dr. Kaminski agreed to assign their rights to any intellectual property generated using University resources, including University research and grant funds to the University (the "Agreements").  The University fully performed and did not breach its Agreements with Drs. Good and Kaminski.

173.    Drs. Good and Kaminski materially breached their Agreements and the covenants of good faith and fair dealing with the University by failing to assign their intellectual property rights related to DIBELS and IDEL to the University.

174.    Drs. Good and Kaminski also materially breached their Agreements with the University by assigning their intellectual property rights related to DIBELS and IDEL to DMG.

175.    In addition, Drs. Good and Kaminski breached their Agreements with the University by inducing University employees, staff and researchers to breach their employment agreements with the University by, among other things, assigning intellectual property developed with University resources to DMG.

176.    The University seeks specific performance of the Agreements.  Moreover, Dr. Good and Dr. Kaminski's breach of their contractual obligations is material and has damaged, and continues to damage the University in an amount to be determined at trial.  Counter-Defendants' ongoing breach is also inflicting irreparable harm on the University.

## NINTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

177.    The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 176 above.

PAGE 64 -  ANSWER, AFFIRMATIVE DEFENSES AND
            COUNTERCLAIMS

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

178.    Dr. Good is a tenured professor at the University.  Dr. Kaminski worked for the University in various capacities until 2011 pursuant to numerous Agreements.  As such, Dr. Good and Dr. Kaminski were under certain fiduciary duties to the University, including, without limitation, duties of loyalty, trust, honesty, and disclosure, which, among other things, required them not to misappropriate the University's resources for their own benefit, make full disclosure to the University of all material facts, and to otherwise act in the utmost good faith and honesty toward the University in all matters connected with Dr. Good and Dr. Kaminski's work with the University.

179.    The University relied upon Dr. Good and Dr. Kaminski to manage the University resources, University research, University training and University employees related to DIBELS and IDEL, and Dr. Good and Dr. Kaminski were bound to act in good faith and with due regard to the interests of the University.

180.    By their actions or omissions, Dr. Good and Dr. Kaminski acted in disregard of their fiduciary duty owed to the University by committing the foregoing unlawful and/or fraudulent actions, by breaching their agreements and the terms of their employment with the University, by placing their own interests above those of the University in their position as professors at the University and by misleading the University through the above-referenced acts and/or omissions.

181.    As a direct and proximate result of the actions taken by Dr. Good and Dr. Kaminski in breach of their fiduciary duty, the University has been damaged, and continues to be damaged in an amount to be determined at trial.  Dr. Good and Dr. Kaminski's ongoing breach also is inflicting irreparable harm on the University.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## TENTH CLAIM FOR RELIEF
### (Constructive Trust)

182.     The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 181 above.

183.     A confidential and/or fiduciary relationship exists and existed between the University and Drs. Good and Kaminski.  Through their unlawful and fraudulent activities, Drs. Good and Kaminski violated the duties imposed by their confidential and/or fiduciary relationship with the University.

184.     By their actions and omissions, Counter-Defendants obtained funds, access to funds and/or the ill-gotten gains of funds, including intellectual property, belonging to the University.  Through their wrongful conduct, Counter-Defendants were unjustly enriched to the detriment of the University.

185.     In good conscience and equity, Counter-Defendants should not be permitted to retain those funds and ill-gotten gains that rightfully belong to the University for use for the benefit of the public.

186.     As a result of Counter-Defendants' wrongful conduct, this Court should impose a constructive trust on each of the Counter-Defendants, pursuant to equity, requiring them to disgorge and make restitution to the University.  Failure to impose a constructive trust would result in unjust enrichment.

## ELEVENTH CLAIM FOR RELIEF
### (Accounting)

187.     The University realleges and incorporates by this reference herein each and every allegation set forth in paragraphs 1 through 186 above.

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

188.     By their actions or omissions described above, Counter-Defendants have obtained funds, access to funds and/or the ill-gotten gains of funds belonging to the University through their wrongful conduct.

189.     Counter-Defendants have failed to account for the use and location of the University's funds and/or the ill-gotten gains of the University's funds.

190.     The University requests that the Court order Counter-Defendants to provide records of books and accounts to establish the use and location of the University's funds and the ill-gotten gains of the University's funds.

## **PRAYER FOR RELIEF**

WHEREFORE, the University requests that the Court enter judgment against Counter-Defendants, as follows:

a.  That the Court enter judgment holding Counter-Defendants liable for copyright infringement and trademark infringement;

b.  That the Court issue preliminary and permanent injunctive relief against Counter-Defendants, and that Counter-Defendants, their officers, agents, representatives, servants, employees, attorneys, successors, licensees and assignees, and all others in active concert or participation with Counter-Defendants, be enjoined and restrained from continued acts of infringement of the trademarks and copyrights at issue in this litigation, including the offering for sale, marketing, or selling any early language and literacy assessment goods and/or services in conjunction with the words "DIBELS" or "IDEL" or any colorable imitation thereof;

c.  The Court find that Counter-Defendants fraudulently obtained the DMG Registrations, or that the DMG Registrations may not be maintained by DMG due to its infringement of the University's rights or other unlawful use of the DMG Registrations; and

PAGE 67 -  ANSWER, AFFIRMATIVE DEFENSES AND
                 COUNTERCLAIMS

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

order that each of the DMG Registrations be canceled from the Principal Register of the United States Patent and Trademark Office;

d.  That the Court issue a declaratory judgment, pursuant to 28 U.S.C. § § 2201(a) and 2202, and the Lanham Act, 15 U.S.C. § 1051 et eq., declaring the University's ownership of common law rights in the University Marks in all states and territories in the United States, as the prior user over the Counter-Defendants, and further declaring that Counter-Defendants have used the University Marks in violation of the University's rights under the Lanham Act and at common law.

e.  The Court find Counter-Defendants' acts complained of herein unlawful as constituting trademark infringement, false descriptions, false designation of origin, false representations of origin and false advertising under the causes of action asserted in this Complaint;

f.  That the Court require that Counter-Defendants deliver up for destruction all labels, signs, prints, advertisements, and other materials that infringe the University's trademark rights, and/or are a result of any false descriptions, false designation of origin, false representations of origin and false advertising by Counter-Defendants;

g.  That the Court order an accounting of all profits received by Counter-Defendants from the use, licensing, assignment and/or sale of the University's intellectual property including the University Copyrights and early language and literacy goods/services using the words "DIBELS" and/or "IDEL" or any colorable imitation thereof;

h.  That the Court enter an order permanently enjoining the Counter-Defendants, it officers, agents, servants, employees, attorneys and affiliated companies, its licensees, assigns and successors in interest, and those persons in active concert or participation with it, from continued acts of infringement of the University Copyrights at issue in this litigation;

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

i.  That the Court enter an order that all copies made or used in violation of the University's Copyrights, and all means by which such copies may be reproduced, be impounded and destroyed or otherwise reasonably disposed of;

j.  That the Court enter an order awarding the University statutory damages and damages according to proof resulting from the Counter-Defendants' infringement of the University Copyrights at issue in this litigation;

k.  That the Court enter an order awarding the University its costs and attorneys' fees under 17 U.S.C. § 505;

l.  That the Court enter a declaratory judgment that the DMG Copyrights are invalid and unenforceable against the University and the University Defendants;

m. That the Court award the University damages for Counter-Defendants' common law trademark infringement and unfair competition, in an amount to be proven at trial;

n.  That the Court award the University damages for Counter-Defendants' conversion, in an amount to be proven at trial;

o.  That the Court award the University damages for breach of contract and breach of the duty of good faith and fair dealing, in an amount to be proven at trial;

p.  That the Court award the University specific performance by ordering DMG, Dr. Good and/or Dr. Kaminski to assign the DMG Copyrights to the University;

q.  That the Court award the University actual damages for Dr. Good and Dr. Kaminski's breach of fiduciary duty, in an amount to be proven at trial;

r.  That the Court impose a constructive trust or equitable lien on assets in the possession or control of Counter-Defendants, or award money damages in equal amounts;

s.  That the Court issue an Order directing Counter-Defendants to provide an accounting of the use and location of University resources, funds and the ill-gotten gains from the foregoing, including any and all licensing revenues;

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

t.   That the Court award the University such equitable relief as may be required to return the University's assets and restore any profits owing to the University;

u.   That the Court award the University all gains, profits, and advantages derived by Counter-Defendants for its unlawful acts, including an award of increased profits;

v.   That the Court award the University all damages caused by Defendants' unlawful acts;

w.   That the Court award the University treble damages as provided by law;

x.   That the Court award the University its attorneys' fees and costs incurred herein, including prejudgment and post-judgment interest; and

y.   That the Court grant the University all other relief to which it is entitled and such other or additional relief as is just and proper.

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## JURY TRIAL DEMAND

The University respectfully demands a trial by jury on all claims and issues so triable.

DATED this 20th day of October, 2014.

BETTS, PATTERSON & MINES, P.S.

By: *s/* James D. Nelson
James D. Nelson, OSB #72219
Email: jnelson@bpmlaw.com
One Convention Place
701 Pike Street, Suite 1400
Seattle, Washington 98101
Telephone: 206.292.9988
Facsimile: 206.343.7053

Pam Kohli Jacobson, *pro hac vice*
pjacobson@bpmlaw.com
BETTS, PATTERSON, & MINES, P.S.
One Convention Place
701 Pike Street, Suite 1400
Seattle, WA 98101
Telephone: (206) 292-9988
Facsimile: (206) 343-7053

Attorneys for Defendants University of
Oregon, Mia Tuan, Edward J. Kame'enui,
Francis J. Fien, and Brad Shelton

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2014, I electronically filed DEFENDANTS UNIVERSITY OF OREGON, MIA TUAN, EDWARD J. KAME'ENUI, FRANCIS J. FIEN IV, AND BRAD SHELTON'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO DYNAMIC MEASUREMENT GROUP, INC.'S COMPLAINT FOR TRADEMARK AND COPYRIGHT INFRINGEMENT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Frederick A. Batson
batson@gleaveslaw.com
Gleaves Swearingen LLP
975 Oak Street
Suite 800
Eugene, OR 97401-3122

William Strong
wstrong@kcslegal.com
Kotin, Crabtree & Strong, LLP
1 Bowdoin Square Suite 800
Boston, MA 02114-2925

K.C. Huffman
kchuffman@thorp-purdy.com
Michelle Bassi
MBassi@thorp-purdy.com
Thorp, Purdy, Jewett, Urness & Wilkinson, P.C.
1011 Harlow Road, Suite 300
Springfield, OR 97477

Dated at Seattle, Washington, this 20th day of October, 2014.

s/ Terri Li
Intellectual Property Paralegal

PAGE 72 - ANSWER, AFFIRMATIVE DEFENSES AND
         COUNTERCLAIMS

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988