**Frederick A. Batson**, OSB 821887
batson@gleaveslaw.com
GLEAVES SWEARINGEN LLP
P. O. Box 1147
Eugene, OR  97440
Phone:  (541) 686-8833
Fax:  (541) 345-2034

**William S. Strong -** Admitted *Pro Hac Vice*
wstrong@kcslegal.com
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA  02114
Phone: (617) 227-7031
Fax:  (617) 367-2988

     Counsel for Plaintiff Dynamic Measurement Group, Inc., and for Dr. Roland Good and Dr. Ruth Kaminski (unnamed parties)

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **DYNAMIC MEASUREMENT GROUP, INC.,** an Oregon corporation, <br><br>      **PLAINTIFF**, <br> v. <br><br> **UNIVERSITY OF OREGON,** a special governmental body as defined by ORS 174.117(1)(i); et al. <br><br>      **DEFENDANTS.** | Case No.  6:14-cv-01295-JR <br><br> **RESPONSE OF DYNAMIC MEASUREMENT GROUP, INC., DR. ROLAND GOOD, AND DR. RUTH KAMINSKI, TO THE OBJECTIONS OF UNIVERSITY OF OREGON TO MAGISTRATE JUDGE COFFIN'S FINDINGS AND RECOMMENDATIONS** |

**Table of Contents**

INTRODUCTORY STATEMENT ........................................................... 4

ARGUMENT ............................................................................................. 4

I.     Magistrate Judge Coffin Correctly Found that UO Has Failed to Allege a Viable Contract Claim as Regards Copyright. .................................... 4

     A.  Magistrate Judge Coffin Correctly Defined the Issue:  Is There Any Signed Agreement to Assign Copyright? ....................................... 4

     B.  UO's Attempt to Save Its Contract Claim by Asserting Copyright Ownership Fails. ............................................................................. 7

     C.  Magistrate Judge Coffin Correctly Found That UO Had Failed to Allege Any Signed Assignment for the Relevant Time Period. ............................ 10

     D.  UO States No Cognizable Claim for "Failure to Assist" UO in Registering Copyright. ................................................................................. 12

II.    Magistrate Judge Coffin Correctly Found that UO Has Failed to State Any Contract Claim with Respect to Trademarks. .................................... 14

III.   UO Has Failed to State Any Claim With Respect to "Patenting New Knowledge" and "Licensing New Knowledge." ..................................... 15

IV.   Magistrate Judge Coffin Correctly Found that UO's Contract Claims Fail as a Matter of Oregon Contract Law. ............................................... 17

     A.  The OARs and IMDs Are General Policy Statements, Not Contract Terms. ....................................................................................... 17

     B.  The OARs and IMDs Do Not Contain Necessary Specific Contract Terms. ....................................................................................... 19

V.    Magistrate Judge Coffin Appropriately Dismissed Claims Against DMG. .. 21

CONCLUSION ...................................................................................... 22

**Table of Authorities**

**Cases**

*Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*, 294 Or. 94 (1982) ............................... 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 17

*Best v. U.S. Nat'l Bank*, 303 Or. 557 (1987) ............................................................ 14

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ....................................... 8

*E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578 (6th Cir. 2003) ............................ 22

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992) ........................... 14

*Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149 (2d Cir. 2003) ..................... 13

*Higher Balance, L.L.C. v. Quantum Future Group, Inc.*, Civil No. 08-233-HA, 2008 U.S. Dist. LEXIS 94362 (D. Or. Nov. 18, 2008) ...................................................................... 22

*Higher Balance, L.L.C. v. Quantum Future Group, Inc.*, Civil No. 08-233-HA, 2008 U.S. Dist. LEXIS 102611 (D. Or. Dec. 18, 2008) .................................................................... 22

*John G. Danielson, Inc. v. Winchester-Conant Props.*, 186 F. Supp. 2d 1 (D. Mass. 2002) ......... 8

*Klimek v. Perisich*, 231 Or. 71, 370 P.2d 956 (1962) .................................................. 19

*Madstad Eng'g, Inc. v. U.S. PTO*, 756 F.3d 1366 (Fed. Cir. 2014) .................................... 16

*Mail-Well Envelope Co. v. Saley*, 262 Or. 143 (1972) .................................................. 21

*McMunigal v. Bloch*, No. C 10-02765 SI, 2010 U.S. Dist. LEXIS 136086 (N.D. Cal. Dec. 23, 2010) ........ 5

*Mellencamp v. Riva Music, Ltd.*, 698 F. Supp. 1154 (S.D.N.Y. 1988) ................................ 5

*Mossberg v. Univ. of Or.*, 240 Or. App. 490 (2011) ................................................... 9

*Reed v. Montgomery*, 180 Or. 196, 175 P.2d 986 (1947) ......................................... 17, 20, 21

*Speciale v. Tektronix, Inc.*, 38 Or. App. 441 (1979) .................................................. 18

*Tjeknavorian v. Mardirossian*, 56 F. Supp. 3d 561 (S.D.N.Y. 2014) .................................. 5

*Valente-Kritzer Video v. Pinckney*, 881 F.2d 772 (9th Cir. 1989) ................................... 5, 10

**Statutes**

17 U.S.C. § 101 (2012) ................................................................................... 8

17 U.S.C. § 201(a) (2012) ............................................................................... 8

17 U.S.C. § 201(b) (2012) ............................................................................... 8

17 U.S.C. § 204 (2012) ................................................................................ 5, 9

17 U.S.C. § 204(d) (2012) ............................................................................... 9

17 U.S.C. § 408(a) (2012) .............................................................................. 13

17 U.S.C. § 411(a) (2012) .............................................................................. 13

17 U.S.C. §§ 580-043-0016(5), 580-043-0026(3) (2012) ................................................ 19

Or. Rev. Stat. § 174.117(1)(i) ......................................................................... 1

Or. Rev. Stat. §§ 6.235, 6.240 ........................................................................ 19

Counterclaim-Defendants Dynamic Measurement Group, Inc., Dr. Roland Good, and Dr. Ruth Kaminski (sometimes collectively referred to herein as "DMG") respectfully submit the following response to the objections filed by the University of Oregon to Magistrate Judge Coffin's Findings and Recommendations dated February 29, 2016.

## INTRODUCTORY STATEMENT

On April 27 and August 4, 2015, this Court dismissed the breach of contract counterclaims filed by the University of Oregon ("UO") on the grounds that UO had failed to identify the terms of any contract with any of the Counter-Defendants.  Doc. 82, p. 1, Doc. 71 p. 30.  The Court allowed UO to amend, to attempt to correct the deficiency, and UO has duly amended its Counterclaims, submitting reams of paper which it claims constitute a contract.  But as Magistrate Judge Coffin has found, the "hodgepodge" of documents and policies UO has submitted do not in fact add up to a cognizable contract:  no written agreement as regards copyright, and no agreement of any kind as regards trademark.

In response to Judge Coffin's Findings and Recommendations, UO has filed dozens of objections, raising theories and claims that it did not raise before Judge Coffin.  But none of these, as will be shown, salvages its pleadings. The phrase that most succinctly describes UO's contract claims is the famous saying of Gertrude Stein: "there is no there there."

## ARGUMENT

**I.  Magistrate Judge Coffin Correctly Found that UO Has Failed to Allege a Viable Contract Claim as Regards Copyright.**

### A.  <u>Magistrate Judge Coffin Correctly Defined the Issue: Is There Any Signed Agreement to Assign Copyright?</u>

This Court has already dismissed, on summary judgment, UO's claims of ownership over the DIBELS copyrights.  That dismissal left UO's claim to copyright hanging by a single thread:

its theory that Drs. Good and Kaminski were obliged by contract to assign their copyrights to the University.

Most fundamentally, UO's amended breach of contract claim fails to allege any written agreement signed by Drs. Good and Kaminski that has any bearing on the copyrights at issue in this case.  An agreement to assign a copyright must be in writing to satisfy the requirements of Section 204 of the Copyright Act, 17 U.S.C. §204. Valente-Kritzer Video v. Pinckney, 881 F.2d 772, 774-75 (9th Cir. 1989), cert. denied, 493 U.S. 1062 (1990).  *Accord, McMunigal v. Bloch*, 2010 U.S. Dist. LEXIS 136086 (N.D. Cal. Dec. 23, 2010); *Mellencamp v. Riva Music, Ltd.*, 698 F. Supp. 1154, 1161-62 (S.D.N.Y. 1988); *Tjeknavorian v. Mardirossian*, 56 F. Supp. 3d 561 (S.D.N.Y. 2014).

When DMG's pending motion to dismiss was before Magistrate Judge Coffin, UO appeared to accept that the absence or existence of a binding agreement to assign copyright in DIBELS 6th was ground zero of the dispute between the parties, insofar as UO's contract claim had to do with copyright.  UO's brief before Judge Coffin cited OAR 580-043-0011, which states:

> "(1) As a condition of employment, all Board and institution employees *shall agree to assign* to the Board rights to: ….
> (b) Educational and professional materials, whether or not registered for copyright, that result from the instructional, research or public service activities of the institutions."

(Emphasis added.)  This is irrelevant to DIBELS, which is not "professional or educational material," but it was the only hook on which UO could hang an argument that Drs. Good and Kaminski had any obligation to assign copyright in DIBELS 6th to the University.

The term "educational and professional materials," used in OAR 580-043-0011 is not defined in the OAR.[1]  Instead, the term is defined in IMD 6.210(2), which says that "educational and professional materials" means materials "used or distributed primarily for the formal or informal instruction or education of professional or general students."  As Magistrate Judge Coffin observed, this definition "appears to apply to university students not the elementary students who benefit from DIBELS and IDEL."  Findings and Recommendations, p. 15 n.6.  UO objects, suggesting that DIBELS might actually be primarily for the instruction of "the UO researchers who develop and assess these materials," and that the question is one for the jury. Objections, pp. 36-37. This is, to put it charitably, disingenuous.  No doubt many graduate students at UO have thrived on DIBELS research, but if they were the primary beneficiaries of DIBELS then all that time and money has benefited only a lucky few.  And clearly that is not true, as UO itself reassures us in its own pleadings.  DIBELS is not designed for the instruction of UO graduate students; DIBELS is a set of "measures designed to test … early literacy skills … ." Second Amended Answer, at ¶10; Doc. 86, p. 4.  As for who primarily benefits, again UO's pleading supplies the answer:

> "The DIBELS assessments…have been used by over 28,000 schools and served over sixteen (16) million students nationwide."  (Second Amended Counterclaims, at ¶14; Doc. 86, p.28.

No more need be said on this point.

Magistrate Judge Coffin could have ended his analysis of the purported "agreement to assign" there, but he chose not to, and instead went to the heart of UO's claim.

---

[1]  UO tries to suggest that the provision in OAR 580-043-0011 that employees "shall agree to assign to the Board rights to … educational and professional materials … that result from the instructional, research, or public service activities of the institutions" is a definition of the term "educational and professional materials."  (Objections, p. 36.) That proposed construction violates the most basic rules of grammar.  The clause that begins with "that result from" is not a defining clause, but a limiting clause.

UO argued before Judge Coffin that the OARs and IMDs were effectively incorporated by reference and binding on Drs. Good and Kaminski as part of their employment contracts, even though they had not signed those contracts.  (See UO's brief, Doc. 100 at pp. 14-23, especially *e.g.* p. 19 ("Agreement to Assign Term in Employment Agreements is Contractually Enforceable Against Good and Kaminski.")  In support of its position UO cited various patent cases in which courts had enforced oral or implied agreements to assign patents.

In reply, DMG pointed out that the patent cases on which UO relied were irrelevant, because patent law has always enforced oral agreements to assign, whereas copyright law requires that an agreement to assign must be in writing.  Magistrate Judge Coffin agreed and specifically found that UO had failed to state a claim for breach of contract to assign the DIBELS copyrights.  (Findings and Recommendations, pp. 13-15.)

**B.  UO's Attempt to Save Its Contract Claim by Asserting Copyright Ownership Fails.**

Now UO has shifted its ground, and puts forward a completely different interpretation of its own counterclaim.  It now says it is not claiming breach for failure to *assign* copyright, because it *already owned* copyright in DIBELS 6th by virtue of its employment agreements with Drs. Good and Kaminski and their incorporation of the OARs and IMDs.  (Objections, Doc. 115, pp. 24-27.)[2]  And it makes the strange statement that "an employee's contractual *duty to assign does not change ownership* – but rather is part of an employee's larger duty to assist UO in the acquisition of copyright registrations…"  (Objections, p.25; emphasis added.)

---

[2] UO's Objection states at p. 26, "UO's breach claims have nothing to do with transfer of copyright ownership – UO already owns the disputed copyrights under its employment contracts with Good and Kaminski."

This convoluted reasoning betrays either a fundamental misunderstanding of copyright law, or an attempt to skirt the Court's existing judgment, or both.

Copyright vests upon creation of a work in whoever is the "author" of the work. 17 U.S.C. §201(a). (Registrations are, as discussed below, purely clerical recordings of claims to ownership.) The author is either the individual who created the work, or the person who hired that individual to create the work if the relationship between them meets the requirements for what the statute calls a "work made for hire." *Id.*; 17 U.S.C. § 201(b). As the Supreme Court noted in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989), the "general rule" is that authorship rests with the creative individual; work for hire is an "exception" carved out by Congress. There is no third alternative to this binary allocation of copyright ownership: the author and initial copyright owner must be either the individual who created the work, or whoever hired that individual to create it (if the relationship meets the requirements of work-for-hire doctrine).

Where a work qualifies as a work for hire, there is and can be no "assignment" from the individual creator to the hiring party, because the hiring party is the author as a matter of law.[3] As soon as copyright is vested in the author of the work, though, ownership of that copyright can pass to someone else only pursuant to 17 U.S.C. § 204(d), i.e., by written instrument or by operation of law.[4]

---

[3] The Copyright Act prescribes two forms of work for hire: work performed by employees within the scope of their employment, and other works of certain limited types, if the hiring and creative parties agree that the work will be considered made for hire. 17 U.S.C. § 101 (definition of "work made for hire"). For the latter type, a written agreement is required, but not for the former. *Id.* But that written agreement is not an "assignment," because the creative party is agreeing that the hiring party will be deemed the "author" for all purposes.

[4] "Operation of law" refers to transfers in bankruptcy, probate, and the like. *John G. Danielson, Inc. v. Winchester-Conant Props.*, 186 F. Supp. 2d 1, 11 n.1 (D. Mass. 2002).

RESPONSE OF DYNAMIC MEASUREMENT GROUP, INC., ET AL TO UNIVERSITY OF OREGON'S OBJECTIONS TO MAGISTRATE JUDGE COFFIN'S FINDINGS AND RECOMMENDATIONS – Page 8

So what exactly is UO trying to say when it argues that it owns copyright in DIBELS 6th pursuant to its employment agreements with Drs. Good and Kaminski?  If it is trying to suggest that the OARs render DIBELS 6th a work made for hire, it cannot: that avenue is foreclosed by this Court's existing summary judgment finding that any UO claim of copyright ownership to DIBELS 6th is time-barred.[5]  In short, at this juncture UO cannot claim that it is the author of DIBELS 6th.

If, on the other hand, UO is trying to claim that its "employment agreements" required the transfer of the copyright in DIBELS 6th in UO, those employment agreements are not exempt from the normal rules of copyright law, and the alleged agreements in this case fail the Copyright Act's threshold requirement of a written agreement to transfer copyright from the authors of DIBELS to the University.  The UO's suggestion that state law, not the Copyright Act, somehow governs this issue regarding copyright transfers is wholly unsupported by any legal authority.  Section 204 of the Copyright Act contains no exemption for employment agreements.  Oregon law no doubt governs many other aspects of employment agreements, but the federal Copyright Act governs the transfer of copyright ownership, and requires that any "transfer of copyright ownership other than by operation of law" must be in writing and signed by the owner.  As noted above, the Ninth Circuit has made clear that this requirement of a signed writing extends to

---

[5]  In fact, the claim is not only time-barred but contrary to the plain language of OAR 580-043-0011.  Assuming for purposes of discussion that DIBELS constitutes "professional and educational materials," the State Board of Higher Education clearly did not believe that such materials were work for hire, otherwise they would not have called for an assignment of rights to the University.  The Board must be assumed to have understood the legal framework in which it operated when it promulgated its OARs, and the words in the OARs should be given their "ordinary meanings." *Mossberg v. Univ. of Oregon*, 240 Or. App. 490, 496 (2011).  Thus, when the OARs say that faculty shall "agree to assign" copyright to UO and contain extensive provisions discussing the logistics and terms of such assignments, the necessary underlying premise is that copyright in the materials concerned belongs *ab initio* to the faculty who create them, otherwise an assignment of rights would be utterly unnecessary.

agreements to assign copyrights, as well as the assignments themselves. *Valente-Kritzer Video v. Pinckney, supra.*

### C. Magistrate Judge Coffin Correctly Found That UO Had Failed to Allege Any Signed Assignment for the Relevant Time Period.

Such signed agreements as UO has managed to produce are all, as Magistrate Judge Coffin found, from an "inapplicable time period." Findings and Recommendations, p. 13. Specifically, with respect to Dr. Good, UO relies on:

- Notices of Appointment, each for a 9-month term, effective during the years 1988-1994;

- A 2002 Sabbatical Leave form; and

- A 2006 Tenure Reduction form.

The signed Notices of Appointment incorporated the OARs by reference, but they ended in 1994, and thus clearly fall outside the applicable time period (the period during which DIBELS 6th was created), which was 2001-2003.[6] Therefore, none of the signed Notices of Appointment applies to DIBELS 6th.

UO's argument that the pre-1995 Notices of Appointment continued in effect after the end of the academic years they covered is a red herring.  Since those Notices of Appointment by their own terms lasted only for nine months apiece, none can be held to govern copyrights created after their expiration.

_____

[6] UO does not say just when DIBELS 6th was written, but is bound by the copyright registration applications it submitted to the U.S. Copyright Office.  Those applications state that DIBELS 5th was completed and published in 2001 (SAC Exh.2), and that DIBELS 6th was completed and published in 2003 (SAC Exh.5).  By necessary inference, the copyrightable work that UO claims should be assigned to it came into being after DIBELS 5th was completed and before the end of 2003.

As for the 2002 Sabbatical Leave form, UO in its Objections offers no explanation whatever for how that form supports its case.  The form contains no reference to any IMDs or OARs relating to assigning intellectual property.  It simply states that Dr. Good "agree(s) to abide by the Board of Higher Education's Administrative rules in effect as of the date of this agreement *covering such leave*." (SAC Exh. 11, p. 12; emphasis added.)  UO has not pointed to any OAR on the subject of sabbatical leave that says anything about ownership of copyright in materials created on sabbatical.  What the OARs do say about sabbatical leave serves only to undermine UO's claim.  They provided that a professor could keep any revenue generated from his work during such a sabbatical.[7]

Since Dr. Good stated in his sabbatical application that he was going to complete DIBELS 6th and create a Spanish version during his sabbatical – SAC Exh. 11 at p. 13 – the OAR just quoted is the very opposite of an obligation to assign copyright in DIBELS 6th.  It confirms that this was sabbatical work, not part of his UO duties, and work from which he was entitled to retain the income.

UO fares no better with the 2006 Tenure Reduction form.  It claims that that contract "ratifies that the OAR and the university rules that previously had applied to [Dr. Good] as full-time faculty would continue to apply to him as part-time faculty." (Objections, p. 19.)  This is wishful thinking.  The form does not purport to reach backward as UO suggests; it is entirely forward-looking:

---

[7] *See* former OAR 580-021-0240:

> Supplementing of Sabbatical Incomes.  Staff members on sabbatical leave may supplement their sabbatical salaries to a reasonable degree, provided that such supplementation strictly conforms to the stated and approved purposes of the sabbatical leave.

> The faculty member agrees that his/her continued part-time employment is subject to the same Administrative Rules of the Oregon State Board of Higher Education and the University of Oregon as those applicable to full-time faculty members.

(SAC Exh. 11, at p.14.) In other words, Dr. Good – although part-time – will be subject to the same rules as his full-time colleagues. By no contortion of language or logic can this be said to govern, retroactively, what Dr. Good created in the years 2001-2003.

Furthermore, the Tenure Reduction application expressly limits the time period during which it applies. The application lists the "current appointment period" as being September 16, 2005 – June 15, 2006 and applies for reduction lasting for one year beginning on June 15, 2007. Accordingly, by its own terms, the application cannot ratify terms of employment prior to September 16, 2005.

The contracts that UO alleges Dr. Kaminski signed are equally inapplicable. They consist of Notices of Appointment for the academic years 1986-88, 1992-2001, and 2005. The first two batches are too early to apply to DIBELS 6[8], and the last too late.[8] Again, UO attempts to cast Dr. Kaminski's 2005 contract as "ratifying" purported earlier oral agreements, but the contract says nothing of the kind. It is entirely forward-looking.

### D. UO States No Cognizable Claim for "Failure to Assist" UO in Registering Copyright.

UO complains that Magistrate Judge Coffin overlooked its claims to have been damaged by the alleged failure of Drs. Good and Kaminski to "assist the University" in "registering for copyright… any new knowledge resulting from employee activities." Objections, pp. 12-13. This is an odd claim, given that copyright registration is a purely clerical task and neither creates,

---

[8] Dr. Kaminski's agreement for the 2000-2001 academic year covers the first five-and-a-half months of 2001. As noted above, the creation of DIBELS 6th did not even begin until DIBELS 5th was completed, which occurred sometime in 2001. (SAC Exh. 2, p. 1.)

RESPONSE OF DYNAMIC MEASUREMENT GROUP, INC., ET AL TO UNIVERSITY OF OREGON'S OBJECTIONS TO MAGISTRATE JUDGE COFFIN'S FINDINGS AND RECOMMENDATIONS – Page 12

nor allocates ownership rights in, any copyrighted work.[9]  But taking the claim at face value, it cannot stand, for two critical reasons:

- To "assist" means "to give support or help; to make it easier for someone to do something or for something to happen."[10]  The OAR states that the responsibility for seeking registration of copyright lies with the Board and its institutional representatives.[11]  UO has failed to allege that it ever requested any assistance on such matters from Drs. Good and Kaminski.  As a matter of simple logic, and the plain English of the OAR, if UO was entitled to register a copyright, it could not allege a breach of a duty to *assist* in that process unless it asked for assistance and was rebuffed.  Yet UO alleges none of these predicate facts.  Indeed, this entire claim is all the more implausible since UO concedes that it negotiated (although it did not sign) an intellectual property agreement in 2005 with Dr. Good that was premised upon DMG's ownership of copyright in DIBELS 6th.  Complaint, ¶¶48-53 and Exh. F (Doc. 1, pp. 14-16 and Doc. 1-1, pp. 13-22) and UO answers thereto (Doc. 86 pp. 9-10).[12]

---

[9] Registration is purely permissive, 17 U.S.C. § 408(a), and creates at best a rebuttable presumption of validity, 17 U.S.C. § 411(a).  *See also* discussion in *Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 166-67 (2d Cir. 2003).

[10] *Webster's Third International Dictionary* http://www.merriam-webster.com/dictionary/assist.

[11] Specifically, the OAR states that, "Employees shall be responsible for cooperating and assisting ***Board and institutional representatives responsible for*** … registering for copyright … new knowledge resulting from employee activities."

[12] UO strains (at p. 12 of its Objections) to cast a 2001 email from Phil Loux to Dr. Good as a request for assistance in registering copyright.  The email cannot bear that weight; it is discussion of options, not a request for registration assistance.  In any event, it predated the development of DIBELS 6th and so has no bearing on the subject matter of this litigation.  The negotiated but unsigned agreement referred to above, however, on its face applies to DIBELS 6th.

- UO cannot claim that Good and Kaminski had a duty to assist it in registering copyrights that, by order of this Court, it cannot claim to own. (Doc. 71 pp. 29-30; Doc. 82 p.4.)

## II. Magistrate Judge Coffin Correctly Found that UO Has Failed to State Any Contract Claim with Respect to Trademarks.

In its Objections, UO concedes that its contract claim is not based on any alleged agreement to assign the DIBELS and IDEL trademarks to UO. Objections at 14. This is a critical concession.

Instead, UO attempts to argue that Drs. Good and Kaminski somehow breached an implied duty of good faith and fair dealing when DMG registered the DIBELS and IDEL trademarks and licensed them to its commercial licensees. (Objections, p. 14-15.) But any such claim fails for the reason Magistrate Judge Coffin has stated: "To the extent the University asserts a breach related to trademarks, neither the NOAs or policies or regulations refer to trademarks." Findings and Recommendations at 15. Not a single OAR, IMD, or any other document attached to UO's counterclaims makes any mention of trademarks. The relevant OAR, 580-043-0011(3), does not refer to trademarks but to "new knowledge resulting from employee activities." Trademarks are not "knowledge," they are merely symbols to which customer goodwill attaches, and are inseparable from the goodwill of the business to which they relate. *E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1289 (9th Cir. 1992).*

UO would like to impose on Drs. Good and Kaminski some sort of free-floating duty of fair dealing, and thereby obtain something it never bargained for, or even contemplated in any of its policies or procedures. An implied duty of good faith and fair dealing cannot spring from nowhere; it must be grounded in the contract. As the Supreme Court of Oregon said in *Best v. U. S. Nat'l Bank*, 303 Or. 557, 563 (Or. 1987), the purpose of the good faith doctrine is

RESPONSE OF DYNAMIC MEASUREMENT GROUP, INC., ET AL TO UNIVERSITY OF OREGON'S OBJECTIONS TO MAGISTRATE JUDGE COFFIN'S FINDINGS AND RECOMMENDATIONS – Page 14

> "to effectuate the reasonable contractual expectations of the parties. … When one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes.  If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith."

UO has made not even a facially plausible showing of how DMG's trademark registrations violated those policies.  If the contracts between Drs. Good and Kaminski and UO made no reference to trademarks – hardly surprising, given that trademarks are commercial, not academic in nature – Drs. Good and Kaminski cannot have had any duty of good faith and fair dealing with respect to trademarks.

## III.  UO Has Failed to State Any Claim With Respect to "Patenting New Knowledge" and "Licensing New Knowledge."

UO complains that Magistrate Judge Coffin overlooked its claims to have been damaged by the alleged failure of Drs. Good and Kaminski to "assist the University" in "patenting … any new knowledge resulting from employee activities," and in "licensing … any new knowledge resulting from employee activities."  Objections, pp. 9-11.

Insofar as UO's allegation applies to patents, the obvious reason for Judge Coffin's supposed oversight is that in its brief before Judge Coffin the University mentioned this theory only once, briefly, on page 32 of a 43-page brief, with no explanation of how Dr. Good or Dr. Kaminski "failed to assist" the University.  Judge Coffin was not under an obligation to do UO's thinking for it.

UO still offers no such explanation.  As an initial matter, UO does not – and could not – allege that Dr. Good, Dr. Kaminski and/or DMG ever took any action that would have prevented UO from registering a patent had it wished and been able to do so.  No DIBELS or IDEL-related patents have ever been applied for by Dr. Good or Dr. Kaminski or DMG.  Moreover, UO does

not allege that it ever asked Dr. Good or Dr. Kaminski to "assist" it in patenting anything related to DIBELS. As noted above with respect to copyright, it is clear that the responsibility for seeking patents rests with UO, and UO does not allege any request for assistance that was rebuffed.[13]

In its Objections, at page 10, UO includes a short parenthetical reference to Dr. Good's and Dr. Kaminski's alleged dealings with "Cambium." (In fact, the company for whom they provided limited consulting services was Voyager Expanded Learning, Inc. ("Voyager").[14]) UO tries to suggest that their consulting with Voyager constituted "failure to assist UO" (notwithstanding the plain wording of the OAR) because they somehow helped Voyager to patent an invention allegedly related to the DIBELS technology.

But Voyager's '413 patent application, filed in 2002, does not list Dr. Good or Dr. Kaminski as the inventors. (Doc. 86-14, p. 30). Back in 2002, patents went to the first person to invent, not the first to file. *Madstad Eng'g, Inc. v. U.S. PTO*, 756 F.3d 1366, 1368 (Fed. Cir. 2014)). Drs. Good and Kaminski were in the public record as the authors of DIBELS 5th, so they had the priority of right as inventors if DIBELS contained anything patentable and if the patent filed by Voyager related to DIBELS. To get an enforceable patent on the DIBELS technology, therefore, Voyager would have had to get an assignment of that technology from Good and

---

[13] To repeat, OAR 580-043-0011 says: "Employees shall be responsible for cooperating and assisting *Board and institutional representatives responsible for patenting* … new knowledge resulting from employee activities." (Emphasis added)

[14] See SAC Exh.74, p.1, citing Voyager as the patent assignee. Cambium Learning Group, whose subsidiary Voyager Sopris Learning, Inc. publishes DIBELS under license from DMG, did not acquire Voyager Expanded Learning until 2009. See http://www.sec.gov/Archives/edgar/data/1466815/000156459015010894/abcd-ex991_6.htm at p. 24.

Kaminski and name them as inventors.  Yet Good and Kaminski are not named as inventors on

Voyager's patents, and UO has not alleged that they assigned anything to Voyager.[15]

In short, what we have here is an alleged act by Drs. Good and Kaminski that, on the face

of UO's own evidence, didn't happen, and that would not have violated the "duty to assist"

obligation in the OAR even if it had happened.  UO has failed to meet the facial plausibility

standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.  Magistrate Judge Coffin Correctly Found that UO's Contract Claims Fail as a Matter of Oregon Contract Law.

Given the specific and terminal shortcomings of UO's contract claims as regards

copyrights, trademarks, and patents, their deficiencies as a matter of Oregon contract law are of

secondary importance.  And indeed, Magistrate Judge Coffin devoted a mere sentence to those

deficiencies, adopting by footnote the detailed analysis made by DMG in its Motion to Dismiss.

(Findings and Recommendations p. 15, n.7.)  Nonetheless, because UO devotes considerable

pages and energy to attempting to rehabilitate is state law arguments, DMG will address them

briefly here.  Oregon contract law is an independent ground on which UO's contract claims must

be dismissed.

### A.  <u>The OARs and IMDs are General Policy Statements, Not Contract Terms.</u>

Under Oregon contract law, both parties must assent to all essential contract terms; if any

material term of a contract is not commonly agreed to by the parties "without doubt or

difference," there is no agreement to enforce.  *Reed v. Montgomery*, 180 Or. 196, 220 (1947).

Oregon breach-of-contract suits based on employment policies have required a showing that both

---

[15]  Just what Voyager did get a patent on is a little hard to tease out from the files UO has attached to the SAC, but it appears that what Voyager was claiming as an invention was a system of assessment using computer technology and linked to suggested readings and other remedial activities based on a student's assessment scores.

RESPONSE OF DYNAMIC MEASUREMENT GROUP, INC., ET AL TO
UNIVERSITY OF OREGON'S OBJECTIONS TO MAGISTRATE JUDGE COFFIN'S
FINDINGS AND RECOMMENDATIONS – Page 17

parties knew of and agreed to their specific respective obligations. *Speciale v. Tektronix, Inc.,* 38 Or. App. 441, 444 (1979) (employment policies that can be applied as a matter of contract are only those policies "which an employer has made known to [the employee] or promise to [the employee]"). Here, UO's pleading and motion papers have revealed that the UO cannot make even the most basic showing that the purported contract terms were part of a bargained-for employment agreement with Good and Kaminski for DIBELS and IDEL property.

Even in those few documents where UO policies were appropriately identified in signed writings, they did not constitute enforceable contract terms because, by their very nature, they were too indefinite to meet the Oregon standard for mutual agreement to the terms of a contract.

The policies do not purport to provide template contract language. They deliberately do not resolve all material terms of a contract to assign intellectual property. For example, the same OAR that UO relies on states that University employees "shall agree to assign" certain "educational and professional materials" to the Board "[a]s a condition of employment" also requires that such employees "be eligible to share in net royalty income from each invention." *Id.* at (4). As a preliminary matter, the language of this administrative rule as well as the identity of its author (the Oregon State Board of Higher Education) suggests that it was intended as an instruction to individual state Universities about what should be included in their employment contracts with individual University employees, not as a contract. Outside of this novel claim brought by UO, no Oregon university has ever asserted the State Board's administrative rules as contract terms for which institutional employees can be liable for breach.

The fact that the policies were intended as guides for entering into more definite agreements between particular parties is further reflected by the IMDs. Those internal management directives provide that, with regard to assignment of materials, University officials

RESPONSE OF DYNAMIC MEASUREMENT GROUP, INC., ET AL TO
UNIVERSITY OF OREGON'S OBJECTIONS TO MAGISTRATE JUDGE COFFIN'S
FINDINGS AND RECOMMENDATIONS – Page 18

are to counsel with institutional authors and evaluate the equities surrounding the materials, then

draft an assignment agreement and recommend the agreement to the Vice Chancellor for Finance

and Administration at the Oregon University System for final review and approval.  IMD §§

6.235, 6.240; OAR §§ 580-043-0016(5), 580-043-0026(3).  The fact that the IMDs contemplate

the drafting of an assignment agreement shows that the IMDs were not meant as the final

contract of agreement with institutional employees.  Regarding timing, the IMDs direct the UO

president "[t]o recommend . . . appropriate action pertaining to the invention or material within

60 days after its disclosure."  IMD 6.235(4)(e). In other words, the OARs and IMDs laid down at

most general internal management principles, and general rules of process to be applied on a

case-by-case basis for a possible future contract, not as the mutually agreed to terms of a contract

between the institution and an employee.

### B.  <u>The OARs and IMDs Do Not Contain Necessary Specific Contract Terms</u>.

The IMD's and OAR's are also too indefinite to constitute a binding contract.  Royalty

price is a material term of an assignment agreement, and UO has not pled that the parties agreed

on a royalty price.  Nor has UO pled that Good and Kaminski were for any reason not eligible to

receive royalties.  The OARs require UO to pay eligible authors not a predetermined royalty, but

a royalty of "up to" 50% of the income from a work.  That requirement is contained in the same

administrative rule that requires the University to get assignment of the work.  OAR 580-043-

0011(1), (4).  Thus, price was a material and mandatory term of any assignment contract in this

case.  When price is a required term and the parties do not reach an agreement on price, the

contract is unenforceable under state law. *Klimek v. Perisich*, 231 Or. 71, 78-79, 370 P.2d 956

(1962)). Accordingly, UO's failure to allege a price term defeats its breach of contract claim for

assignment.

RESPONSE OF DYNAMIC MEASUREMENT GROUP, INC., ET AL TO
UNIVERSITY OF OREGON'S OBJECTIONS TO MAGISTRATE JUDGE COFFIN'S
FINDINGS AND RECOMMENDATIONS – Page 19

The time for performance is also not discernable from the OARs and IMDs, or from the facts alleged in UO's pleading. UO's allegations include contracts and policy terms spanning from the late 1980's to the early 2000's. Yet, there is not a single allegation that states *when* Good or Kaminski was supposed to assign property to the UO. "To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations." *Reed v. Montgomery*, 180 Or. 196, 220 (1947).

While the policies contemplate some aspects of a time for performance in connection with negotiations about royalty sharing, etc., UO has not pled any facts from which Good and Kaminski could discern when performance was due. The IMDs require that University officials make recommendations and take actions with respect to assignment agreements. Specifically, they require UO action within 60 days of receiving an employee's disclosure of an invention or material. Although UO has conceded that Good and Kaminski fully complied with any duty they had to disclose the subject inventions,[16] it has not alleged that UO itself took any action within 60 days of receiving the disclosure. If anything, this suggests that the time for performance under its own policies either has expired, or never came due.

In sum, UO has alleged OAR and IMD policies that contain various optional terms which, if accepted by UO, Good, and Kaminski, could have formed the basis for an assignment agreement. However, by doing so, UO has not met the standard applicable to state law claims for breach of contract. Under Oregon law, "[a] binding contract is not made by a memorandum which shows upon its face that the minds of the parties have not met and that it does not express a completed agreement, but states terms which, if accepted, would be the

---

[16] At oral argument, Counsel for the University of Oregon stated in relevant part, "[Good and Kaminski] certainly, as [Counsel for DMG] suggests, complied with the disclosure duties. . . they complied with those regulations." Tr. 30:16-17.

foundation of further treaty between the parties with reference to essential particulars which, when agreed upon, would form part of a contract." *Reed v. Montgomery,* 180 Or. 196, 119-220, 175 P.2d 986 (1947).  Accordingly, UO has not sufficiently pled the terms of contract on which it could sue Good or Kaminski for breach.  Its contract claims would thus have to be dismissed even if they met (which they do not) the requirements of federal copyright law.

## V.    Magistrate Judge Coffin Appropriately Dismissed Claims Against DMG.

UO's claim for breach of contract against Counter-Defendants' corporation, DMG, and its prayer for specific performance against DMG, are illogical, and Magistrate Judge Coffin correctly recommended that they be dismissed.

UO does not and could not allege that DMG was a party to any contract with UO.  It offers no precedent for holding DMG liable for the alleged contract violations of its shareholders.

In earlier briefing on this issue, UO cited a number of cases which, as Magistrate Judge Coffin has pointed out, are fraudulent conveyance cases, not contract cases, and thus  irrelevant to its contract claim.  UO seems to have abandoned those cases, and has come up with a new set, but they too are wide of the mark.  Specifically:

- *Mail-Well Envelope Co. v. Saley,* 262 Or. 143 (Or. 1972), involved breach of a contract of non-competition, and the court enjoined future competition not only by the individual who was party to the contract, but also by the corporation he owned or controlled.  The opinion does not discuss on what basis the injunction was issued against the corporation, but injunctions typically run against not only a party but all persons acting in concert with that party.  Obviously, the defendant there could not be allowed to

escape his contractual obligations by shifting his unlawful activity to his corporation. That has no bearing on the situation in this case.

- *Higher Balance, L.L.C. v. Quantum Future Group, Inc.*, 2008 U.S. Dist. LEXIS 94362 (D. Or. Nov. 18, 2008) was, as a later opinion in the same litigation makes clear, a case involving defamation and related torts, in which the individual defendant's corporation was involved as a co-tortfeasor. See *Higher Balance, L.L.C. v. Quantum Future Group, Inc., 2008 U.S. Dist. LEXIS 102611 (D. Or. Dec. 18, 2008)*. UO's case is a contract case, and tort precedent is meaningless in this context.

- In *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578 (6th Cir. Ohio 2003), there was no corporate defendant at all.

- Finally, in *Amfac Foods, Inc. v. International Systems & Controls Corp.*, 294 Or. 94 (Or. 1982), the issue before the court was whether to pierce the corporate veil to reach individual shareholders, not the other way round.

In short, as is unfortunately so often the case with UO's case citations in this matter, these cases do not say what UO represents that they say.

None of the cases UO cited then or cites now involve claims for breach of contract damages and specific performance against a corporation that was not party to the (alleged) personal contract at issue. There is simply no basis for maintaining DMG as a party to UO's contract claim, even if that claim were otherwise tenable.

## CONCLUSION

UO has proved unable to identify any written agreement to assign copyright to itself, and its attempt to claim that it owns copyright pursuant to employment agreements with Drs. Good and Kaminski runs afoul of the plain language of the relevant OAR, and of this Court's existing

RESPONSE OF DYNAMIC MEASUREMENT GROUP, INC., ET AL TO
UNIVERSITY OF OREGON'S OBJECTIONS TO MAGISTRATE JUDGE COFFIN'S
FINDINGS AND RECOMMENDATIONS – Page 22

award of summary judgment dismissing UO's copyright claims.  As for trademarks, UO has pled

no agreement that has anything to do with them.  UO's final gambit – that Drs. Good and

Kaminski failed to "assist" UO with respect to patenting and licensing "new knowledge" – falls

flat because it has not alleged that it ever asked them for any assistance in any such venture.

    UO having failed for a second time to produce pleadings that state a claim for relief, its

contract claims should now be dismissed with prejudice.

## CERTIFICATE OF COMPLIANCE

    This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b),

54-1(c), or 54-3(e) because it contains 5,357 words, including headings, footnotes, and

quotations, but excluding the caption, table of contents, table of cases and authorities, signature

block, exhibits, and any certificates of counsel.

    Dated this 4th day of April, 2016.

                        GLEAVES SWEARINGEN LLP


            By:     */s/ Frederick A. Batson*_____
                    Frederick A. Batson, OSB 821887
                    batson@gleaveslaw.com
                    GLEAVES SWEARINGEN LLP
                    P. O. Box 1147
                    Eugene, OR  97440
                    Phone:  (541) 686-8833
                    Fax:  (541) 345-2034

                    OF COUNSEL:

                    William S. Strong
                    wstrong@kcslegal.com
                    KOTIN, CRABTREE & STRONG, LLP
                    One Bowdoin Square
                    Boston, MA  02114
                    Phone: (617) 227-7031
                    Fax:  (617) 367-2988

RESPONSE OF DYNAMIC MEASUREMENT GROUP, INC., ET AL TO
UNIVERSITY OF OREGON'S OBJECTIONS TO MAGISTRATE JUDGE COFFIN'S
FINDINGS AND RECOMMENDATIONS – Page 23